**Luke KEITH, Jr., Appellant**

v.

**LAUREL COUNTY FISCAL COURT; Laurel County Industrial Development Authority; Lawrence Kuhl, Laurel County Judge Executive; Laurel County Magistrates Roy Crawford, Tom Baker, Noah Baker, Billy Oakley, David Westerfield, and Jim Lewis; Dennis Karr, Director, Laurel County Industrial Development Authority;**

and Laurel County Industrial Development Authority Board Members Coey D. Prichard, Jim Tatum, Glenn Chaney, Ernest Matt House, Susan Hodges, and Charles Pennington, Appellees.

No. 2007–CA–000446–MR.

Court of Appeals of Kentucky.

May 16, 2008.

Luke Keith, Jr., Hazard, KY, for appellant.

Pierce W. Hamblin, Estill D. Banks, II, Lexington, KY, for appellees.

Before COMBS, Chief Judge, NICKELL, Judge; GRAVES,[1] Senior Judge.

1. Senior Judge John W. Graves, sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes (KRS) 21.580.

## OPINION

GRAVES, Senior Judge.

Luke Keith, Jr. appeals from an order of the Laurel Circuit Court granting the above captioned appellees judgment upon the pleadings upon his claim that Dennis Karr, Executive Director of the Laurel County Industrial Development Authority, made false statements about property owned by Elmo Greer and Sons, Inc., thereby discouraging a hospital from locating on the Greer property. Keith owns property adjacent to the Greer property and believes that he incurred injury as a result of the false statements. For the reasons stated below, we affirm.

In 2005 Marymount Hospital was searching for a tract of property in the London, Kentucky, area upon which to construct a new facility. Keith owned property located on GOP Street upon which he operated a motel. Located adjacent to Keith's property was a 40–acre tract owned by Elmo Greer and Sons. In October 2005 Keith met with Virginia Dempsey, Administrator of the Hospital, to discuss the possibility of locating the new facility on the Greer tract. Because the Greer tract was located adjacent to his motel property, Keith anticipated that if the Hospital located there, he would receive a financial advantage, either by an appreciation in the value of the property, or increased occupancy rates at his motel. Keith spoke to Elmo about his plan, and Elmo agreed to the idea.

A short time later, Keith spoke to Richard Bloom, who had been retained by the Hospital to help locate a facility site. Bloom told Keith that Dennis Karr, Executive Director of the Laurel County Industrial Development Authority, had told him that the Greer site would not be a suitable site for the facility because it had been deep mined and, consequently, the ground was not stable. Karr also told Bloom that a detention center had been constructed on property adjacent to the Greer tract, and because it, too, had been deep mined, the building started "falling in" and could no longer be used as a jail. Keith informed Bloom that the Greer property had not been deep mined. He also informed Bloom that the problem with the detention center site was that it had been built upon a former landfill site and that the soil had not been properly reclaimed, and that this was the reason for the problems with the detention center facility.[2]

Keith thereafter, through an open records request, determined that Karr had telephoned Bloom using an Industrial Development Authority telephone. The telephone records indicate that the calls were made on August 9, 2005, and this is when Keith believes the false information regarding the Greer property was made by Karr.

On December 22, 2006, Keith filed, pro se, a complaint in the Laurel Circuit Court naming the above captioned appellees as defendants. The Complaint alleged that Karr had "slandered the PLAINTIFF'S property[.]" In lieu of an answer, the appellees filed a motion to dismiss upon the grounds of failure to state a claim upon which relief can be granted or, alternatively, upon the grounds that Keith's claim had not been filed within the applicable limitations period. On February 13, 2007, the trial court entered an order granting the appellees' motion to dismiss. The trial court analogized Keith's "slander of property" claim to a slander of title action and determined that since Keith had not alleged a diminishment in the value of his property because of Karr's statement, he had failed to state a claim upon which

2. It is unclear whether the Greer property was part of the landfill site.

relief could be granted. This appeal followed.

Before us, Keith contends that the trial court erred in dismissing his claim.

When considering a motion to dismiss under Kentucky Rules of Civil Procedure (CR)12.02, the pleadings should be liberally construed in a light most favorable to the plaintiff and all allegations in the complaint taken to be true. *Gall v. Scroggy,* 725 S.W.2d 867, 869 (Ky.App.1987) (citing *Ewell v. Central City,* 340 S.W.2d 479 (Ky. 1960)). "The court should not grant the motion unless it appears the pleading party would not be entitled to relief under any set of facts which could be proved in support of his claim. In making this decision, the circuit court is not required to make any factual determination; rather, the question is purely a matter of law. Stated another way, the court must ask if the facts alleged in the complaint can be proved, would the plaintiff be entitled to relief?" *James v. Wilson,* 95 S.W.3d 875, 883–84 (Ky.App.2002) (citations omitted).

■ As previously noted, the trial court analogized to slander of title law in disposing of appellant's Complaint. Slander of title involves disparaging and false assertions about one's ownership of land or other property. In order for one to prevail on a claim of slander of title, he must prove "that the defendant has knowingly and maliciously communicated, orally or in writing, a false statement which has the effect of disparaging the plaintiff's title to property; he must also plead and prove that he has incurred special damage as a result." *Bonnie Braes Farms, Inc. v. Robinson,* 598 S.W.2d 765, 766 (Ky.App. 1980). The trial court determined that since Keith had failed to plead special damages (either a loss by the plaintiff of a sale of his property or a diminution in its fair market value, *id.*), his claim must fail.

■ We believe that the cause of action alleged by Keith better fits into the tort described in Restatement of Torts (Second) § 626, Disparagement of Property in or Quality Of Land, Chattels And Intangible Things,[3] which provides as follows:

> The rules on liability for the publication of an injurious falsehood stated in § 623A[4] apply to the publication of matter disparaging the quality of another's land, chattels or intangible things, that the publisher should recognize as likely to result in pecuniary loss to the other through the conduct of a third person in respect to the other's interests in the property.

Kentucky has not adopted this tort,[5] and we need not address in this case whether it

---

3. The tort is also referred to as "Disparagement of Quality—Trade Libel."

4. Restatement of Torts (Second) § 623A, Liability For Publication Of Injurious Falsehood, provides as follows: "One who publishes a false statement harmful to the interests of another is subject to liability for pecuniary loss resulting to the other if (a) he intends for publication of the statement to result in harm to interests of the other having a pecuniary value, or either recognizes or should recognize that it is likely to do so, and (b) he knows that the statement is false or acts in reckless disregard of its truth or falsity."

5. Kentucky has recognized the tort of interference with a prospective business advantage. *See National Collegiate Athletic Ass'n By and Through Bellarmine College v. Hornung,* 754 S.W.2d 855, 857–859 (Ky.1988) (adopting §§ 766B, 767, and 773 of the Restatement (Second) of Torts and recognizing that "intentional and improper interference with the prospective contractual relations of another gives rise to liability.") This tort will cover the usual situation involving Restatement Section 623A or Restatement Section 626. *See CMI, Inc. v. Intoximeters, Inc.,* 918 F.Supp. 1068, 1088 (W.D.Ky.1995) (citing W. Keeton, Prosser and Keeton on the Law of Torts § 128, at 964 (5th ed.1984)). However, for

should be. However, we believe it to provide a useful analogy in reviewing Keith's claim.

Upon application of Section 626, we are persuaded that Keith's claim must fail for two reasons. The first reason is because the falsehood allegedly uttered by Karr did not involve property owned by Keith—it involved property owned by Greer. We do not interpret Restatement Section 626 as providing a cause of action by which Keith could recover for false statements made by Karr about Greer's property, and Keith does not cite us to any authority which would authorize such a cause of action. Keith was a stranger to any possible agreement between the Hospital and Greer for the purchase of the Greer property and, at best, had a mere expectancy of an economic advantage in the event the Hospital located there, but no enforceable rights.

The second reason Keith's claim fails under our Section 626 analogy is because this tort, like slander of title, requires proof of special damages. *See* Section 626, comment b. As noted by the trial court, Keith failed to plead either a loss of a sale of his property or a diminution in its fair market value. Rather, the only damages alleged by Keith were speculative damages relating to additional profits or an appreciation in land prices if the hospital located on the Greer property.[6] Thus we believe that Keith's claim must fail under this requirement as well.

■■■ As an alternative basis for affirming the trial court, we agree with the appellees that Keith filed his cause of action outside the applicable limitations peri-

od. KRS 413.140(1)(d) provides that an action for libel or slander must be commenced within one (1) year after the cause of action accrued. We believe that the cause of action stated by Keith falls within this provision. As previously noted Keith alleged in his complaint that the statements made by Karr occurred in August 2005. Bloom told Keith about the statements in October 2005. Thus, Keith's cause of action accrued no later than October 2005. However, Keith did not file his Complaint until December 22, 2006. As such, even if Keith stated a valid cause of action, we believe his Complaint was filed outside the applicable limitations period. We are not persuaded by Keith's argument that his cause of action did not accrue until the Hospital announced its decision to build its new facility elsewhere.

For the foregoing reasons the judgment of the Laurel Circuit Court is affirmed.

ALL CONCUR.

---

reasons similar to those stated herein, we do not believe Keith could prevail upon his claim under application of this tort.

**6.** We note that in his pleadings Keith states that he corrected Karr's alleged misstatement to Bloom, and presumably Bloom would have

further investigated the Greer property to ascertain the truth of the matter if it were a desirable site. Thus, it is also speculative that the Hospital's decision to locate elsewhere had anything to do with Karr's statements.