Patricia W. BALLARD,
Appellant/Cross–
Appellee

v.

1400 WILLOW COUNCIL OF CO–
OWNERS, INC., Appellee/Cross–
Appellant.

and

1400 Willow Council Of Co–Owners,
Inc., Appellant/Cross–Appellee

v.

Patricia W. BALLARD, Appellee/Cross–
Appellant.

Nos. 2010–SC–000533–DG,
2011–SC–000584–DG.

Supreme Court of Kentucky.

Nov. 21, 2013.

Rehearing Denied June 19, 2014.

Sheryl G. Snyder, Louisville, Susan Lynn Williams, Griffin Terry Sumner, Louisville, John Kendrick Wells IV, Frost Brown Todd, LLC, Counsel for Appellant/Cross–Appellee.

John L. Fleischaker, Bradley A. Case, Louisville, James Lee Adams, Louisville, Dinsmore & Shohl, LLP, Counsel for Appellee/Cross–Appellant.

Opinion of the Court by Justice KELLER.

This appeal involves a dispute between 1400 Willow Council of Co–Owners, Inc. (the Council), a condominium association, and one of its co-owners, Patricia W. Ballard (Ballard), regarding the need to replace and who should bear the cost of replacement of the two-story wall of windows in Ballard's condominium (the wall of windows). In 1989, Patricia Ballard purchased a penthouse condominium occupying the 20th and 21st floors of the 1400 Willow building located in Louisville, Kentucky. In 1990, Ballard noticed water coming in through a wall between her fireplace and a window. Throughout the next decade, Ballard reported problems with water leakage to the Council. In late 1999/early 2000, the Council waterproofed the exterior masonry, which resolved the problem.[1]

A dispute arose over the need to replace the wall of windows and over who should bear the cost of replacement. Independent contractors advised the Council that glass could fall from Ballard's wall of rotting windows, and they had to be replaced. The Council contended that co-owners, such as Ballard, owned the windows in their condominiums and were personally responsible for replacement costs. Contrary to the Council's assertion, Ballard was advised by Paul Lederer, an engineer and professor at the University of Louisville, that her wall of windows was sound and could withstand the highest wind speeds that have occurred in the Louisville area in the past 100 years. Thus, Ballard contended that her wall of windows did not need to be replaced. Furthermore, Ballard contended that, if her wall of windows did need to be replaced, the Council was responsible for the replacement costs pursuant to the Master Deed[2] because the wall of windows is a "common element" of the structure. Finally, Ballard argued that any need for replacement was caused by the Council's failure to maintain the exterior of the building as required by the Master Deed.

In September 2003, the Council's attorney sent Ballard a letter demanding that

---

1. In the summer of 1998, the co-owner of another penthouse condominium began experiencing water leaks. An investigation by the Council's general manager revealed water was penetrating through exterior brick and mortar joints. Thereafter, the exterior masonry of the entire building was waterproofed and the leaks stopped.

2. The Amended and Restated Master Deed for 1400 Willow Council of Co–Owners, Inc. sets forth the scope of the condominium project and specifies the responsibilities of the Council and its co-owners.

she replace the wall of windows within ten days at her own expense or the Council would enter her condominium to perform the replacement and hold her responsible for the costs. Ballard filed this action on November 24, 2003, seeking injunctive and declaratory relief. The purpose of the temporary injunction was to prevent the Council and its agents from entering her condominium and moving/removing her property to replace her wall of windows. The declaration of rights was sought to determine who was financially responsible for replacing/repairing the wall of windows.

On December 4, 2003, the Council filed an answer and counterclaim and filed a *lis pendens* with both the circuit and county court clerks. Count I of the counterclaim sought to recover the cost of replacing Ballard's wall of windows. Count II of the counterclaim sought enforcement of a lien for the cost of replacing the wall of windows as well as costs and reasonable attorneys' fees incurred in collecting and enforcing the lien. After a hearing, the trial court entered a restraining order on December 29, 2003, preventing the Council from entering Ballard's condominium before February 1, 2004, in order to repair or replace her wall of windows. Ballard removed her property by February 1, 2004, and the Council replaced her wall of windows in March and April of 2004 at a cost to the Council of nearly $65,000.

In June 2004, Ballard amended her complaint seeking damages for breach of contract, breach of fiduciary duty, promissory estoppel, as well as punitive damages. On January 24, 2005, the Council filed a document with the Jefferson County Clerk styled "Statement of Claim for Lien Pursuant to Master Deed" (the lien statement). It appears that the Council intended the lien statement to serve as notice, in addition to the *lis pendens*, that it was asserting a lien against Ballard's condominium.

In May 2005, the trial court denied a motion brought by the Council seeking partial summary judgment on its counterclaim that Ballard bore responsibility for the cost of replacing the wall of windows under the Master Deed. In June 2006, Ballard amended her complaint again to assert a slander of title claim emanating from the Council's filing of the *lis pendens* and the lien statement. Coupled with the slander of title claim, Ballard filed an action to quiet title to her condominium. In her second amended complaint, Ballard claimed that the filing of the *lis pendens* and the lien statement diminished the fair market value of her condominium, rendered her condominium unmarketable, and caused the loss of sales of her condominium. The damages alleged by Ballard included $755,000.82 in lost principal on stock she claimed she was forced to sell to pay legal and other expenses; $213,061.90 in taxes on the sale of that stock; and damage to her personal property.

Thereafter, the Council moved for summary judgment on the slander of title and personal property damage claims and for dismissal of Ballard's claims for lost stock principal and for payment of taxes related to the sale of that stock. The court granted summary judgment on the property damage claim because it was filed outside the two-year statute of limitations. Furthermore, the court ruled that Ballard could not recover losses suffered as a result of selling stock at a depressed price to pay expenses and attorneys' fees and for the tax consequences on the sale of the stock.

On September 4, 2007, a nine-day jury trial commenced on the remaining claims. The jurors found that Ballard's wall of windows needed to be replaced; the need for replacement did not result from Bal-

lard's willful or negligent acts or omissions; replacement was necessary because the Council had failed to exercise reasonable care in maintaining the exterior of the building; the Council, acting through its Board of Directors, failed to exercise "good faith and loyalty" in making decisions with respect to all co-owners, including Ballard; the Council's failure "was a substantial factor in causing loss to Patricia Ballard;" $54,000 would compensate Ballard for monthly condominium fees she paid while attempting to sell her condominium; the Council "knowingly and maliciously communicated, orally or in writing, a false statement which had the effect of disparaging Patricia Ballard's title" to her condominium by either decreasing its fair market value or causing a loss of sale; $75,000 would compensate Ballard for the damages she incurred as a result of the disparagement of her title; and punitive damages should not be awarded to Ballard.

On November 5, 2007, the trial court entered an order that awarded judgment to Ballard in the amount of $129,000, bearing interest at twelve percent per annum; gave the Council ten days to release its *lis pendens* notice and statement of lien from Ballard's condominium; authorized Ballard to recover taxable court costs from the Council; and consistent with a stipulation entered by the parties, reserved for an evidentiary hearing on all claims for attorneys' fees under the Master Deed.

On November 15, 2007, the Council moved for a judgment notwithstanding the verdict (JNOV) on Ballard's claims of breach of fiduciary duty and slander of title. The trial court denied that motion. The Council appealed from the trial court's order and final judgment and the court's subsequent order denying its motion JNOV.

Thereafter, the Council moved the trial court to refrain from awarding attorneys' fees to either party under the terms of the Master Deed. The Council admitted that, pursuant to section 10.2 of the Master Deed, a "prevailing party" may recover attorneys' fees in actions arising from a failure of a co-owner or the Council to comply with the terms of the Master Deed, by-laws, or rules and regulations. However, it argued that neither party had "prevailed." Ballard opposed the motion arguing she was the prevailing party because the jurors had found in her favor on virtually all claims and had awarded damages to her. Without holding a hearing pursuant to JRP[3] 404, and with no itemized bill for incurred costs, services rendered or hours worked in the record, the trial court denied the Council's motion. Furthermore, the trial court declared Ballard the prevailing party and entered an order entitling her to recover fees and costs. The

---

3. Jefferson Circuit Court Rules of Practice and Procedure. JRP 404, entitled "Motions for Attorney's Fees" states:

All motions for attorney's fees shall be accompanied by an affidavit of counsel setting forth in detail the dates of the services rendered, the exact nature of the service rendered on each date, the names of the persons rendering the service (if paralegal or other counsel of record), and the number of hours (or fractions thereof) rendered by each person. The number of hours shall be totaled, and a suggested reasonable amount of compensation per hour shall be set forth.

The affidavit must also disclose the statute or other authority supporting the requested award of an attorney's fee. If the applicable statute is KRS 411.195, then the affidavit must also contain a showing that the required attorney's fee was actually paid, or was agreed to be paid, by the party enforcing the written obligation.

When a party seeking an award of an attorney's fee relies upon a writing to establish entitlement to the fee, a copy of the writing shall be attached with the applicable portion highlighted.

Council filed a separate appeal from this judgment, and the two appeals were consolidated.

The Court of Appeals reversed and remanded for a new trial. Specifically, the Court of Appeals concluded that: (1) the Council was entitled to summary judgment on the time-barred slander of title claim; (2) retrial was required regarding breach of fiduciary duty as a result of an instructional error; and (3) prior to an award of attorneys' fees, an evidentiary hearing as mandated by JRP 404 is required. This Court granted discretionary review.

## I. SLANDER OF TITLE.

Ballard contends that the Court of Appeals erred when it concluded that summary judgment should have been granted in favor of the Council on her slander of title claim for three reasons. First, Ballard argues that the Court of Appeals incorrectly concluded that a one-year statute of limitations applies to slander of title claims. Second, even if a one-year statute of limitations applies, the Court of Appeals erred when it: (1) concluded that the limitations period began to run when the Council filed the *lis pendens* instead of when Ballard suffered special damages; and (2) failed to conclude that her claim related back to her original complaint under Kentucky Rule of Civil Procedure (CR) 15.03. Finally, Ballard claims that the Court of Appeals incorrectly concluded that the Council did not commit slander of title as a matter of law. We address each argument in turn.

■■■ Summary judgment serves to terminate litigation where "the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, togeth-

er with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56.03. Summary judgment should be granted only if it appears impossible that the nonmoving party will be able to produce evidence at trial warranting a judgment in her favor. *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476 (Ky.1991). Summary judgment "is proper where the movant shows that the adverse party could not prevail under any circumstances." *Id. (Citing Paintsville Hosp. Co. v. Rose*, 683 S.W.2d 255 (Ky.1985)).

■■■ On appeal, we must consider whether the circuit court correctly determined that there were genuine issues of material fact and that the moving party was not entitled to judgment as a matter of law. *Scifres v. Kraft*, 916 S.W.2d 779 (Ky.App.1996). Because summary judgment involves only questions of law and not the resolution of disputed material facts, an appellate court does not defer to the circuit court's decision. *Goldsmith v. Allied Building Components, Inc.*, 833 S.W.2d 378 (Ky.1992). Likewise, we review the circuit court's interpretations of law *de novo. Cumberland Valley Contrs., Inc. v. Bell County Coal Corp.*, 238 S.W.3d 644, 647 (Ky.2007).

### A. Statute of Limitations.

■■■ Ballard argues that, because slander of title involves real property, it is governed by the five-year statute of limitations set forth in Kentucky Revised Statute (KRS) 413.120(7). That section applies to "[a]n action for an injury to the rights of the plaintiff, not arising on contract and not otherwise enumerated." [4] The Council

4. We note that in a footnote in its brief, the Council argues that Ballard raised the five-year limitations argument for the first time

before this Court. Ballard prevailed on her slander of title claim in the trial court, and this Court may affirm that judgment on "any

disagrees and contends that the Court of Appeals correctly concluded that the slander of title claim is governed by the one-year statute of limitations set out in KRS 413.140(*l*)(d), which governs actions for "libel or slander." In support of its argument, the Council points to *Montgomery v. Milam*, 910 S.W.2d 237, 240 (Ky.1995), wherein the Court concluded that the one-year statute of limitations found in KRS 413.140(1)(d) applied to a slander of title claim.[5]

As set forth in *Bonnie Braes Farms, Inc. v. Robinson*, 598 S.W.2d 765, 766 (Ky. App.1980):

In order to maintain a slander of title action in this jurisdiction, the plaintiff must plead and prove that the defendant has knowingly and maliciously communicated, orally or in writing, a false statement which has the effect of disparaging the plaintiff's title to property; he must also plead and prove that he has incurred special damage as a result. Contrary to appellant's contention at oral argument, if special damage has not been incurred, the action is not maintainable.... The special damage required may consist of either a loss by the plaintiff of a sale of his property or a diminution in its fair market value.

(Citations omitted).

We find the analysis of slander of title claims in *Pond Place Partners, Inc. v. Poole*, 351 S.C. 1, 567 S.E.2d 881, 890–91 (S.C.Ct.App.2002) to be instructive:

Slander of title is grounded in the tort of injurious falsehood. *See id.* ("Both torts are specific examples of the general tort of injurious falsehood and the

same privileges which apply to the torts of personal defamation apply to the tort of injurious falsehood."); *Zamarello v. Yale*, 514 P.2d 228 (Alaska 1973); *Procacci v. Zacco*, 402 So.2d 425 (Fla.Dist. Ct.App.1981). In this light, the first comment of section 624 of the Restatement (Second) of Torts explains:

The particular form of injurious falsehood that involves disparagement of the property in land, chattels, or intangible things, is commonly called "slander of title." The earliest cases in which it arose involved oral aspersions cast upon the plaintiff's ownership of land, as a result of which he was prevented from selling or leasing it; and the decisions went upon an analogy to the kind of oral defamation of the person that is actionable only upon proof of special harm. (*See* § 569). The extension of the liability to other kinds of injurious falsehood has left the terms "slander of title," and "disparagement," merely as special names given to this particular form of the tort.

The association with personal defamation through the word "slander" has unfortunately tended to lead the courts to regard the plaintiff's property interest as somehow personified, and so defamed, and thus to look to the law of defamation. "Slander of title," however, differs from personal defamation in at least three important respects. One is that proof of special harm is required in all cases. (*See* § 633). Another is that there must be proof of a greater amount of fault than negligence on the part of the

---

ground on which the decision could properly have been made." *Old Republic Ins. Co. v. Ashley*, 722 S.W.2d 55, 58 (Ky.App.1986). Therefore, any failure by Ballard to raise this issue earlier is not dispositive.

**5.** We note that *Montgomery* was a 3–3 decision. All six Justices in that opinion agreed that the one-year statute of limitations applied to the slander of title claim, but disagreed as to when the limitations period began to run.

defendant regarding the falsity of the statement. (*See* § 623A, especially Comment d). The third is that because of the economic interest involved the disparagement of property may in a proper case be enjoined, whereas defamation normally cannot.

*Id.* at cmt. a, *quoted in Lone v. Brown,* 199 N.J.Super. 420, 489 A.2d 1192, 1195 (App.Div.1985).

▇▇▇ Based on the preceding, we conclude that slander of title is not a subcategory of slander, which is a personal injury action. Rather, it is an action for injury to real property rights resulting from disparagement of title to real estate. Therefore, KRS 413.140(*l*)(d), which the Court of Appeals relied on, does not apply. Slander of title claims are more akin to the types of actions expressly governed by the five-year limitations period provided in KRS 413.120. For example, KRS 413.120(4) applies to actions "for trespass on real or personal property," and KRS 413.120(5) applies to actions "for the profits or damages for withholding real or personal property." Although not specifically mentioned, slander of title claims are governed by KRS 413.120(7), which applies to "[a]n action for an injury to the rights of the plaintiff, not arising on contract and not otherwise enumerated." Accordingly, we conclude that the Court of Appeals incorrectly applied a one-year statute of limitations instead of a five-year statute of limitations. To the extent that this holding conflicts with *Montgomery,* that case is hereby overruled.[6]

## B. Running of the Limitations Period/Relation Back.

Having concluded that a five-year statute of limitations applies, the issues of when the slander of title claim in this case began to accrue and whether Ballard's claim related back to her original complaint are moot.

## C. Absolute or Qualified Privilege.

The Council contends that the filing of the *lis pendens* and lien statement enjoy the absolute privilege that is accorded to judicial proceedings. Because we see no distinction between the *lis pendens* and the lien statement for purposes of this analysis, we refer to them collectively as the "*lis pendens.*"

In its summary judgment order, the trial court stated that it would not address the judicial privilege because no Kentucky case had applied it to a *lis pendens.* Although raised, the Court of Appeals did not directly address this issue. Instead, it concluded that KRS 382.440(1) specifies the protocol to be followed in filing a *lis pendens* notice, and the Council was entitled to summary judgment on the slander of title claim because its *lis pendens* notice comported with the statutory requirements for filing a *lis pendens.* Ballard contends that, in essence, the Court of Appeals concluded that the *lis pendens* filed by the Council was absolutely privileged and could not support a slander of title claim.

▇▇▇ Whether the filing of a *lis pendens* is protected by an absolute or qualified privilege is an issue of first impression for this Court. "The prevailing rule and the one recognized in this jurisdiction is that statements in pleadings filed in judicial

---

**6.** The Kentucky Court of Appeals in *Keith v. Laurel County Fiscal Court,* 254 S.W.3d 842 (Ky.App.2008), also applied the one-year statute of limitations period of KRS 413.140(1)(d) to a cause of action that was analogized by the trial court to a slander of title action. In that case, a landowner alleged that a Laurel County development official "slandered the Plaintiff's property" by making certain oral statements about adjoining real estate. To the extent that *Keith* conflicts with this opinion, it is hereby overruled.

proceedings are absolutely privileged when material, pertinent, and relevant to the subject under inquiry, though it is claimed that they are false and alleged with malice." *Schmitt v. Mann,* 291 Ky. 80, 163 S.W.2d 281, 283 (1942) (citations omitted). "On the other hand, statements which are not pertinent and material are only qualifiedly privileged, and immunity from the legal consequences of their being libelous depends on their being made in good faith." *Id.* (citation omitted).

As set forth in *Pond Place Partners, Inc. v. Poole,* 351 S.C. 1, 567 S.E.2d 881, 893–94 (S.C.Ct.App.2002):

> "[T]he majority of cases from other jurisdictions that have dealt with the question have held that such filing [of a *lis pendens* ] enjoys the absolute privilege that is accorded to judicial proceedings." *Superior Constr. Inc. v. Linnerooth,* 103 N.M. 716, 712 P.2d 1378, 1380 (1986) (citing *Albertson v. Raboff,* 46 Cal.2d 375, 295 P.2d 405 (Ca.1956); *Stewart v. Fahey,* 14 Ariz.App. 149, 481 P.2d 519 (1971); *Hauptman v. Edwards, Inc.,* 170 Mont. 310, 553 P.2d 975 (1976); *Hansen v. Kohler,* 550 P.2d 186 (Utah 1976); *Wendy's of South Jersey, Inc. v. Blanchard Mgmt. Corp. of N.J.,* 170 N.J.Super. 491, 406 A.2d 1337 (Ch.Div.1979); *Zamarello v. Yale,* 514 P.2d 228 (Alaska 1973); *Procacci v. Zacco,* 402 So.2d 425 (Fla.App.1981)). The rationale set forth by these jurisdictions is:
>
> (1) With few exceptions, any publication made in a judicial proceeding enjoys absolute privilege from later charges of defamation.
>
> (2) The sole purpose of recording a notice of *lis pendens* is to give to prospective buyers constructive notice of the pendency of the proceedings.
>
> (3) The notice of *lis pendens* is purely incidental to the action wherein it is filed, and refers specifically to such

action and has no existence apart from that action.

> (4) The recording of a notice of *lis pendens* is in effect a republication of the proceedings in the action and therefore, it is accorded the same absolute privilege as any other publication incident to the action.

*Linnerooth,* 712 P.2d at 1381; *see also Brough v. Foley,* 572 A.2d 63 (R.I.1990) (holding that since the filing of a *lis pendens* is incident to the filing of the complaint, if the plaintiff had probable cause to bring the action, then neither of these actions can be considered slander of title.); *Kropp v. Prather,* 526 S.W.2d 283, 287 (Tex.Civ.App.1975) ("Because the recording of a *lis pendens* is specifically authorized by statute and has no existence separate and apart from the litigation of which it gives notice ... the filing of a notice of *lis pendens* ... is a part of [a] judicial proceeding" and thus forms no basis for an action for libel or slander.); *Dethlefs v. Beau Maison Dev. Corp.,* 511 So.2d 112, 117 (Miss.1987) ("The *lis pendens* notice was a privileged communication and therefore not actionable for slander of title."); *Louis v. Blalock,* 543 S.W.2d 715, 718 (Tex.Civ. App.1976) ("[A] claim, either oral or written, asserted in the course of a judicial proceeding, cannot be made the basis of a civil action for slander of title."); *Manders v. Manders,* 897 F.Supp. 972 (S.D.Tex.1995) (finding no basis for a slander of title action arising out of the filing of a *lis pendens); Palmer v. Shelby Plaza Motel, Inc.,* 443 So.2d 285 (Fla. Dist.Ct.App.1983) (*lis pendens* describing only the property covered by the mortgage which is being foreclosed is absolutely privileged); *Pryor v. Findley,* 949 P.2d 1218 (Okla.Civ.App.1997) (ruling the filing of a divorce petition, which purportedly caused a cloud on title, was

protected by absolute privilege for slander of title claim); *Lone v. Brown,* 199 N.J.Super. 420, 489 A.2d 1192 (App.Div. 1985) (stating the filing of a *lis pendens* is merely a republication of the complaint and is, therefore, absolutely privileged).

Several courts cite the seminal California case of *Albertson v. Raboff,* 46 Cal.2d 375, 295 P.2d 405 (Ca.1956), for the proposition that the filing of a *lis pendens* is absolutely privileged. *Berger v. Shea,* 150 Ga.App. 812, 258 S.E.2d 621 (1979); *Houska v. Frederick,* 447 S.W.2d 514 (Mo.1969); *Stewart v. Fahey,* 14 Ariz.App. 149, 481 P.2d 519 (1971); *see also Kelly v. Perry,* 111 Ariz. 382, 531 P.2d 139 (1975) (citing *Stewart v. Fahey* ). Generally, however, where courts do not find that an absolute privilege applies to the filing of a *lis pendens* in a slander of title action, they find a qualified privilege subject to a finding of malice. *Westfield Dev. Co. v. Rifle Inv. Assocs.,* 786 P.2d 1112, 1116–1118 (Colo. 1990) (finding that "a party has only a qualified privilege to interfere with an existing contract by means of initiating litigation and filing pleadings and notice of *lis pendens* " because the need to restrict lawsuits brought in bad faith outweighs the policy of encouraging free access to the courts under an absolute privilege); *Kensington Dev. Corp. v. Israel,* 142 Wis.2d 894, 419 N.W.2d 241, 244 (Wis.1988) (declaring the filing of a *lis pendens* is only conditionally privileged; "[i]f the absolute privilege rule is applied, the slander of title statute ... would be nullified because it would be virtually impossible to assert a claim if all communications in judicial proceedings relating to property were absolutely privileged"); *see also* Annotation, *Recording of instrument purporting to affect title as slander of title,* 39 A.L.R.2d 840 (1955).

In *Albertson v. Raboff* 46 Cal.2d 375, 295 P.2d 405 (Ca.1956), Raboff brought an action against Albertson in which he sought a money judgment and either a lien on real property owned by Albertson or a judgment declaring that Albertson's title to the property was obtained by fraud to avoid creditors. Raboff also filed a *lis pendens* in conjunction with his action. At trial, although Raboff won a money judgment, the actions involving an interest in the property were resolved in Albertson's favor. In addressing Albertson's action for slander of title, the court found that a recorded notice of *lis pendens* was expressly authorized by statute. *Id.* at 408. The court explained, "[i]t would be anomalous to hold that a litigant is privileged to make a publication necessary to bring an action but that he can be sued for defamation if he lets any one know that he has brought it, particularly when he is expressly authorized by statute to let all the world know that he has brought it." *Id.* at 409 (citation omitted). The Superior Court of New Jersey agreed. "It would be incongruous indeed to say that the complaint and notice of appeal are privileged but the notice of *lis pendens* filed in the same pending judicial proceeding, designed to give notice and preserve the status quo, would not also be privileged." *Lone v. Brown,* 199 N.J.Super. 420, 489 A.2d 1192, 1196 (App.Div.1985).

■ We disagree with the preceding and, following the reasoning in *Warren v. Bank of Marion,* 618 F.Supp. 317, 325 (W.D.Va.1985), we conclude that the filing of a *lis pendens* is protected by a qualified privilege.

It is this court's position, however, that when all the interests involved are taken into consideration the filing of a notice of *lis pendens* is more appropriately characterized as a qualifiedly privileged oc-

casion. As a preliminary matter, such a notice can easily be viewed as an extrajudicial publication involving merely a private act, and not involving any function of the court, thus falling outside the scope of protection given to communications made in the course of judicial proceedings. Nevertheless, the filing of a notice of *lis pendens* gives a creditor an opportunity to protect whatever interest he believes he may have in certain real estate during litigation by preventing the property from being taken by a bona fide purchaser for value. The one holding title to the property, on the other hand, deserves the protection of a legal disincentive against an ill willed creditor who, without justification, wishes to apply undue pressure by tieing up the record owner's property with a notice of *lis pendens* for what could be a period of years. In holding a notice of *lis pendens* subject to a qualified privilege, the court is not placing any restraints on a creditor who in good faith wants to protect his potential legal interests, while at the same time allowing a landowner an opportunity to prove that she has been defamed and her property disparaged by the unfounded and malicious publication of another.

*Id.* (Citation omitted).

 As noted in *Stringer v. Wal–Mart Stores, Inc.,* 151 S.W.3d 781, 796 (Ky.2004), a qualified privilege applies only if the communication was "made in good faith and without actual malice." Such a determination is a question for the jury. *See Harstad v. Whiteman,* 338 S.W.3d 804, 811 (Ky.App.2011). Having carefully reviewed the instructions, we conclude that the jury found that the qualified privilege did not apply to the Council's filing of the *lis pendens.* Specifically, Instruction No. 6 provided the following:

Patricia Ballard has asserted a claim for Slander of Title against the Council. You may find for Patricia Ballard on this claim if you find, from the evidence, that the Council, acting through its Board of Directors, agents or employees, knowingly and maliciously communicated, orally or in writing, a false statement which had the effect of disparaging Patricia Ballard's title to her condominium Unit #2004 and which caused a decrease in the fair market value of condominium Unit #2004 or a loss of sale of condominium Unit #2004.

Under Question No. 7, the jury concluded that the Council knowingly and maliciously made a false statement which disparaged Ballard's title and caused a decrease in her condominium's value or a loss of sale. Because the jury found that the statements made by the Council in its *lis pendens* were false and knowingly and maliciously made, the jury concluded that a qualified privilege did not apply.

Therefore, we hold that Ballard's slander of title claim was properly submitted to the jury; we reverse the Court of Appeals on this issue; and we affirm the trial court's judgment on Ballard's slander of title claim.

## II. BREACH OF FIDUCIARY DUTY.

The next issue on appeal is whether the trial court erred in denying the Council's motion for a directed verdict on its alleged breach of fiduciary duty, or alternatively, the soundness of the instruction submitted to the jurors on the Council's alleged breach.

Ballard alleged in her first amended complaint that the Council had breached its fiduciary duty by: 1) failing to disclose the source of water leaks to the co-owners; 2) not disclosing to Ballard that it had ceased performing basic exterior maintenance on her wall of windows even though

it continued maintaining the windows of the other co-owners; and 3) wrongly amending the 1985 Master Deed in September of 2003 to make her financially responsible for the cost of replacing her wall of windows.

At trial, Ballard alleged the Council breached its fiduciary duty as a result of a board member's, Ron Cook (Cook), involvement in an incomplete sale of her condominium. In 2000, Cook agreed to finance the purchase of Ballard's condominium by John McDermott for $625,000. According to the Council, while the $625,000 sales price agreed upon by Ballard and McDermott may have been less than half the figure at which Ballard valued her condominium, it was on par with the sale price of a comparable condominium six months earlier. Ultimately, the sale fell through when Cook withdrew his financing in 2004.

The Council argued Cook's role in the incomplete sale was strictly in his individual capacity and not in his capacity as a board member. Furthermore, the Council noted that it had approved the sale, a requirement under the Master Deed, and argued it had done nothing to thwart the sale. Moreover, the Council contended that it should not be held responsible for a contract to which it was not a party.

The Court of Appeals did not address whether Ballard presented sufficient evidence to overcome the Council's directed verdict motion because it reversed and remanded for a new trial due to its finding that a jury instruction was erroneous.[7] Specifically, the Court of Appeals concluded that, pursuant to KRS 273.215(1), the Council members owe their duty to the Council as a whole, and not to the individual co-owners, such as Ballard. Based on this interpretation, the Court of Appeals concluded that Instruction No. 4, which was submitted to the jurors on the breach of fiduciary claim, was faulty.[8]

Ballard contends that the Court of Appeals erred when it relied upon KRS 273.215(1), which sets forth standards to be followed by directors of a nonprofit corporation. Specifically, Ballard argues that she "did not bring a derivative suit against the [Council's] directors in their individual capacities for breach of their statutory fiduciary duties to the [Council] as an entity; she sued the [Council] as an entity for breach of its contractual obligations and common law fiduciary duties to her, individually." Ballard contends that her claims are against the Council as an entity and not against its directors in their individual capacities; therefore, KRS 273.215 is inapplicable. According to Ballard, that statute does not address the duties which a nonprofit corporation owes to individual members or co-owners. Those duties are established by common law.

■■■ We agree with Ballard that KRS 273.215 does not apply to the instant case because Ballard only brought suit against

7. We note that the Court of Appeals opinion incorrectly states that the Council filed a motion for summary judgment on the breach of fiduciary duty claim.

8. Instruction No. 4 stated:
It is the Duty of the Council, acting through its Board of Directors, to exercise good faith and loyalty in conducting the business of the council which includes an obligation to exercise good faith and loyalty in making decisions with respect to *all co-owners, including co-owner, Patricia Ballard.* If you find, from the evidence that the Council, acting through its Board of Directors, failed to comply with this duty and that such failure was a substantial factor in causing loss to Patricia Ballard, you shall find for Patricia Ballard. Otherwise, you shall find for the Council.
(Emphasis added).

the Council and not its Board of Directors. However, we cannot say that the Council has a fiduciary duty to the individual owners. Ballard has not cited to any Kentucky authority which provides that a nonprofit corporation has a fiduciary duty. Rather, we believe it is the officers and directors that have a fiduciary duty, and that duty is to the nonprofit corporation. *See* KRS 273.215. Additionally, Ballard has failed to cite to any Kentucky authority which provides that a nonprofit corporation may be held vicariously liable for a director's breach of fiduciary duty.

 Even if the nonprofit corporation can be held vicariously liable for a director's breach of fiduciary duty, the directors in this case only owed a fiduciary duty to the corporation. Specifically, KRS 273.215 provides that a director shall discharge his duties "(a) In good faith; (b) On an informed basis; and (c) In a manner he honestly believes to be in the best interests of the *corporation*." (Emphasis added). As correctly noted by the Court of Appeals, this is a reasonable interpretation because the co-owners in this case could have competing agendas, which may not be in the best interests of the Council. Thus, the board of directors had a fiduciary duty to the Council as a whole and not to the individual unit owners, such as Ballard.

 We do agree with the dissent's conclusion that Ballard could have relied on the concept that, "[i]n every contract, there is an implied covenant of good faith and fair dealing." *Ranier v. Mount Sterling Nat. Bank*, 812 S.W.2d 154, 156 (Ky. 1991). Under Question No. 1, the jury found that Ballard's windows needed to be replaced. The jury also found under Question No. 2 that the windows needed to

be replaced because of the "Council's failure, acting through its Board of Directors, to exercise reasonable care in providing for exterior maintenance[.]" Although the jury found that the Council breached the Master Deed by failing to maintain the exterior of the building,[9] it did not assess any damages as a result of that breach. Instead, the jury awarded $54,000 in damages to Ballard as a result of the breach of fiduciary duty claim set forth in Instruction No. 4. The $54,000 in damages was for Ballard's monthly condominium maintenance fees incurred while she attempted to sell her condominium.

 We agree with the dissent's conclusion that the jury could have found the Council liable for $54,000 in damages. Because the Council was contractually obligated to maintain the exterior of the building under the Master Deed, the jury could have determined that the Council's failure to do so breached its general contractual duty to act in good faith. However, the jury instructions did not ask the jury to assess any damages as a result of that contractual breach. Contrary to the dissent, we cannot say that the jury's finding of a breach of fiduciary duty is equivalent to a finding of failure to act in good faith. As explained in *In re Sallee*, 286 F.3d 878, 891–92 (6th Cir.2002), these are separate concepts.

A fiduciary relationship creates the highest order of duty imposed by law. If a fiduciary relationship exists, the fiduciary cannot profit from the relationship without the knowledge and permission of the principal. In a fiduciary relationship, the fiduciary must make every effort to avoid having his own interests conflict with those of the principal. When conflict is unavoidable, the

---

**9.** As set forth above, the Master Deed required the Council to maintain the exterior of the building.

fiduciary must place the interests of the principal above his own.

A fiduciary duty requires more than the generalized business obligation of good faith and fair dealing. The Texas Supreme Court described this distinction in *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591 (Tex.1992):

> The duty of good faith and fair dealing merely requires the parties to "deal fairly" with one another and does not encompass the often more onerous burden that requires a party to place the interest of the other party before his own, often attributed to a fiduciary duty.
>
> . . . .
>
> The fact that one businessman trusts another, and relies upon his promise to perform a contract, does not rise to a confidential relationship. Every contract includes an element of confidence and trust that each party will faithfully perform his obligation under the contract. Neither is the fact that the relationship has been a cordial one, of long duration, evidence of a confidential relationship.

To make out a claim that a fiduciary relationship existed, the party claiming the fiduciary relationship must first show the relationship existed before the transaction that is the subject of the action. Second, the party claiming a fiduciary relationship must show that reliance was not merely subjective. Third, the party claiming a fiduciary relationship must show that the nature of the relationship imposed a duty upon the fiduciary to act in the principal's interest, even if such action were to the detriment of the fiduciary.

(Citations omitted).

Because the jury awarded $54,000 in damages to Ballard as a result of the breach of fiduciary duty claim and not the breach of contract claim, we affirm Court of Appeals's reversal of the $54,000 judgment to Ballard.

In conclusion, we affirm the Court of Appeals's determination that the Council did not have a fiduciary duty to Ballard. Because we conclude that the fiduciary duty claim should have been dismissed, the Court of Appeals's remand for a new trial is not appropriate. Therefore, we reverse the portion of the opinion by the Court of Appeals remanding this matter for a new trial on Ballard's breach of fiduciary duty claim. However, we do remand this matter to the trial court for entry of a judgment dismissing Ballard's fiduciary duty claim.

### III. ATTORNEYS' FEES.

The final issue on appeal is the dispute over attorneys' fees. This claim arose via a motion filed by the Council requesting that the trial court refrain from awarding attorneys' fees to either party. As noted above, this motion was filed before either party submitted a bill for legal services. In the final judgment, the trial court allowed Ballard to recover taxable court costs from the Council pursuant to CR 54.04. The order further stated that

> in accordance with the parties [sic] stipulation at trial, any claim for attorney fees under the Amended and Restated Master Deed is bifurcated from the underlying trial and all issues relating to attorneys [sic] fees due the prevailing party are reserved for evidentiary hearing and judgment by the Court, without a jury, in accordance with the procedures set forth in JRP 404. The court shall retain jurisdiction of this issue after entry of its judgment.
>
> This Judgment is final and appealable, there being no just cause for delay.

Thereafter, the trial court denied the Council's motion that neither party be awarded attorney's fees. Relying on section 10.2 of the Master Deed, which entitles the "prevailing party" to recover costs of attorneys' fees, as well as KRS 453.040 and CR 54.04, the trial court awarded attorneys' fees to Ballard. Because we are reversing the trial court on the breach of fiduciary duty claim and are remanding for entry of a new judgment, the trial court must determine anew whether Ballard is the "prevailing party" in this case pursuant to section 10.2 of the Master Deed.

## IV. CONCLUSION.

For the foregoing reasons, we affirm in part, reverse in part, and remand.

MINTON, C.J., CUNNINGHAM, and VENTERS, JJ., concur.

NOBLE, J., concurs in part, dissents in part by separate opinion in which SCOTT, J., joins. ABRAMSON, J., not sitting.

NOBLE, J., Concurring in part, Dissenting in part.

I differ with the majority's well written opinion only on the point that a non-profit corporation owes no fiduciary duty to individuals who own property in the building. The nonprofit at issue here is the Council of Co-owners that governs the use of the property for all the owners, in the owner's dual roles as the collective unit of *owners,* and as individuals who are an *owner.* The individual owner in this case is Patricia Ballard.

Before getting to the substance, I must emphasize that Ballard has *two* relationships with the Council. *See, e.g., Frances T. v. Village Green Owners Assn.,* 42 Cal.3d 490, 229 Cal.Rptr. 456, 723 P.2d 573, 587 (1986) ("Plaintiff [the condo owner] therefore had a dual relationship with defendants [the association].")

First, she is a co-owner with every other owner in the building and therefore a member of the Council, which has been incorporated as a non-profit corporation, 1400 Willow Council of Co–Owners, Inc. Her membership in the Council is akin to being a shareholder in a for-profit corporation. Her corporate relationship derives from this. This relationship controls any claims that affect the building and co-owners as a whole. The fiduciary relationship that the majority describes stems from this relationship and runs only to the co-owners as a whole. For that reason, any harm to the co-owners as a whole, such as damage to the common areas, may be litigated only by the Council itself or, if the association declines, by a derivative suit in the name and for the benefit of the Council. *See, e.g., Cigal v. Leader Development Corp.,* 408 Mass. 212, 557 N.E.2d 1119, 1123 (1990); *Avila South Condominium Ass'n, Inc. v. Kappa Corp.,* 347 So.2d 599, 609 (Fla.1977).

But Ballard is also an individual owner, holding her interest in her own right, alone, and without interference from any other owner. She therefore has a second relationship stemming from her status as a beneficiary of the services offered by the Council. Some jurisdictions have described this second relationship as similar to that between a landlord and tenant. *See Frances T.,* 229 Cal.Rptr. 456, 723 P.2d at 587. This interest is not co-operative; it is singular. As an owner of an interest held only by her, she has a deed of ownership that sets forth both how her ownership relates to the other owners in the building, but which also sets forth her rights as an individual owner. As a co-owner and an individual owner, she has certain contractual rights and expectations that are set forth in the document describing her individual interest, and in the Master Deed, which describes how that inter-

est is governed, in this case by the Council of Co-owners.

While the Council of Co-owners is the governing entity, it acts through its Board. The Board is comprised of members of the Council. When the Board acts, or in this case fails to act, it is the action of the Council, not of the Board members individually.

As described by the majority, a dispute arose between Ballard and the Council over replacing the windows in her condominium, which resulted in several claims and counterclaims being filed. Ballard accused the Council of failing to maintain the exterior structure of the building, which caused water to enter her unit through the structure around her windows and to damage her property. The Council claimed that Ballard was responsible for replacing the windows, which had become a hazard. Eventually, the Council entered her condominium and replaced the windows. During this time, Ballard unsuccessfully tried to sell the condominium unit and continued paying fees to the Council.

When the matter proceeded to court, Ballard alleged breach of contract and breach of fiduciary duties, both under the master-deed laying out the duties of the Council. The Council counter-claimed that Ballard was liable for the cost of replacing the windows.

When the matter went to trial, the jury found that Ballard's windows needed to be replaced but that they needed to be replaced because of the Council's negligence in maintaining the outside of the building. The trial court instructed the jury to then decide whether the Council, acting through its Board of Directors, "exercise[d] good faith and loyalty in conducting the business of the Council which include[d] an obligation to exercise good faith and loyalty in making decisions with respect to all co-owners, including co-owner, Patricia Ballard." The instructions also asked whether the Council's failure to comply with this duty of good faith and loyalty was a substantial factor in causing loss to Ballard. The jury concluded that the Council had failed to comply with this duty and that it was a substantial factor in causing the loss to Ballard. As a result, the jury awarded Ballard $54,000 to compensate her for condominium membership dues she paid while trying to sell the condominium.

This case derailed at the Court of Appeals, partly because the parties and the Court failed to separate Ballard's status as a co-owner from her status as an individual owner. To that end, only her corporate relationship was analyzed, and the Court of Appeals further erred when it applied a statute pertaining to suits against *directors* of a non-profit corporation. That conclusion was wrong, because Ballard's claim was not against the directors, but was an individual claim against the Council directly. This decision, however, led the Court of Appeals, and I believe the majority of this Court, down the wrong path of analysis.

This case is not about Ballard's corporate position. It is not about a joint, cooperative issue such as damage to a common stairwell. It is not about whether the Council owes a duty to the co-owners as a body; certainly it does, and I agree with the majority's statement of the law in that regard.

This case is about what Ballard, as an individual owner, had a right to expect from her management company, the Council. The master deed provided that decisions about common elements were to be made by the Council. One of those decisions regarded keeping the walls around all units in adequate repair so that no owners' windows got damaged from building leaks. The one area where that did

not happen, according to the fact-finding of the jury, was around Ballard's windows. Only her windows had to be replaced.

Under her deed, the windows belonged to her, not the Council or any other owner. The damage was done to *her* property individually, and to the common property of the walls.

All the building's owners had an interest in the walls, and an expectation that the Council would oversee their maintenance. The Council clearly owed a corporate duty to the co-owners.

This does not—cannot—mean that the Council did not also owe a duty of proper maintenance to Ballard for her individual property as well. Her deed directed that she look to the Council to ensure the maintenance necessary to protect her individual slice of the pie.

When a member of a collective is harmed, but no one else is, the member may sue for her individual damages. This is true, *even in a corporate setting:* "Where the shareholder suffers an injury separate and distinct from that suffered by other shareholders,' or the corporation as an entity, the shareholder may maintain an individual action in his own right." *2815 Grand Realty Corp. v. Goose Creek Energy, Inc.,* 656 F.Supp.2d 707, 715–16 (E.D.Ky.2009) (quoting *Gaff v. Federal Deposit Insurance Corp.,* 814 F.2d 311, 315 (6th Cir.1987)).

And this is true in the condominium-association setting. Most of the cases involving condominium disputes present plaintiffs who seek to recover individually what belongs to the collective owners. In those cases, "[w]here the 'plaintiffs are . . . seeking recovery of funds properly owing to the unit owners' association,' they can only assert their claims through a derivative suit." *Cote v. Levine,* 52 Mass.App.Ct. 435, 754 N.E.2d 127, 131 (2001) (quoting *Cigal,* 557 N.E.2d at 1123). The individual plaintiffs cannot recover. If Ballard had made such a claim, the majority's approach would be correct.

But this is not such a case. Ballard has made individual claims relating only to damage to her as an individual. "[W]here the plaintiff ha[s] alleged individual damages in addition to derivative damages, the . . . judge properly differentiate[s] between the two causes of action and denie[s] summary judgment on as much of the complaint as alleged individual damages." *Id.* Here, Ballard has not even brought both types of claims; instead, she has made only individual claims.

As an individual owner of a unit of the condominium project maintained by the Council, her claims do not arise out of her membership relationship or flow to her membership; instead, her claims flow from the fact that she owns one of the units in the building which she claims was harmed by the Council. Those claims belong to her individually, as the harm she claims is distinct from the harm other co-owners may have suffered, and thus can only be brought by her as an individual.

This is a basic tenet of property ownership that has not been obliterated by condominium living, even though some property rights are restricted by condominium deeds. The condo purchaser is aware, based on the master deed and her individual ownership deed, where common interests end and private ownership begins.

Here, the jury found that the windows needed to be replaced because the Council had not properly performed its duty to maintain the building area around her windows, which was a breach of its contract with her through the master deed, and of the attendant fiduciary duty inherent in the contract.

So Ballard filed this action against the Council claiming that the Council breached its contract with her individually because it failed to properly maintain the building around her windows, and further, did not deal fairly with her about repairing the resulting damage, thus violating the general fiduciary duty—that "of good faith and fair dealing"—contained in all contracts. *Ranier v. Mount Sterling Nat. Bank,* 812 S.W.2d 154, 156 (Ky.1991).

As we have noted, "the circumstances which may create a fiduciary relationship are ... varied." *Steelvest, Inc. v. Scansteel Service Center, Inc.,* 807 S.W.2d 476, 485 (Ky.1991). "[A]s a general rule, ... such a relationship is one founded on trust or confidence reposed by one person in the integrity and fidelity of another and which also necessarily involves an undertaking in which a duty is created in one person to act primarily for another's benefit in matters connected with such undertaking." *Id.* Each owner relies on the Council to maintain and repair the common portions of the building because such projects are beyond the means and control of individuals who personally own only a part of the building. They must necessarily be able to trust that the Council will carry out that duty in good faith and a loyal manner.

Indeed, the notion of owing fiduciary duties *only* to the co-owners as a group makes no sense in this light, when the harm accrues only to one individual owner. The co-owners cannot sue collectively for harm to a single owner. (Suits on behalf of the association collectively are only for collective harm, and can be asserted only by the association or derivatively on behalf of the association.) Only the single owner has standing to sue for her individual harm.

This then leads to a bigger question: Just who is the individual owner, who is harmed by Council neglect, supposed to sue for that harm? The individual owner cannot sue board members individually, because the negligence was not done by any member individually. The negligence was done when the Council failed to properly maintain the walls around her unit. No one board member did that. It was done by Council action, or in this case, neglect. And suing the Board as a whole is suing the Council, as the Board acts as the agent of the Council. Ballard named the correct party.

In essence, the majority's approach would leave Ballard without a remedy for harm to her individual interests under the theory that the Council can never owe a duty of good faith and fair dealing to an individual owner. The majority reaches this conclusion because it can find no Kentucky case law finding such a duty. But the novelty of a question—the reason we accepted discretionary review—surely cannot be grounds for finding no duty.

And the proposition that a condominium association can owe fiduciary duties to individual owners is not a mythical scenario. It simply requires the right circumstances. Those circumstances were present in *Sassen v. Tanglegrove Townhouse Condominium Ass'n,* 877 S.W.2d 489 (Tex.App.1994). In that case, the plaintiff sued her condominium association for breach of fiduciary duties related to its repairs to her unit after a fire. The court allowed the claim because the condominium declaration gave the association the exclusive power to make such repairs. *Id.* at 492–93. As the plaintiffs agent in this regard, the association owed her fiduciary duties, which is breached by acting arbitrarily and capriciously. A later decision by the same court found that there was no fiduciary duty owed to the individual co-owners because the action in question (hiring household help) was not the exclusive province of the association. *Harris v. Spires Coun-*

*cil of Co–Owners,* 981 S.W.2d 892, 897–98 (Tex.App.1998).

Ballard's case is similar to *Sassen.* The Council had exclusive authority to maintain the exterior of the building. Ballard's harm arose because the Council failed to properly engage in this maintenance, which led to her windows being damaged and needing to be replaced. This, in turn, led to a delay in the sale of her condominium, and she consequently had to continue paying her condominium fees. This implicated the duties that the Council owed to Ballard individually. It was thus proper to instruct the jury on whether the Council acted in good faith in this capacity and whether any failure harmed Ballard and entitled her to damages.

The crux of the problem in this case is that the jury awarded damages under an instruction for breach of fiduciary duty that is poorly worded. The instructions begin by asking whether Ballard's windows needed to be replaced. The jury said yes. The second question asked whether the replacement of the windows was caused by the Council's failure to provide reasonable maintenance to the building exterior. The jury answered yes. By this factual finding, the jury found that the Council had breached its contractual duty to Ballard as an individual owner, not to the co-owners as a whole, because the other owners "had no dog in that fight."

Then the jury was instructed as follows:
**Instruction No. 4**

It is the duty of the Council, acting through its Board of Directors, to exercise good faith and loyalty in making decisions with respect to all co-owners, including co-owner, Patricia Ballard. If you find, from the evidence, that the Council, acting through its Board of Directors, failed to comply with this duty and that such failure was a substantial factor in causing loss to Patricia Ballard,

you shall find for Patricia Ballard. Otherwise you shall find for the Council.
**Question No. 4**

From the evidence, do you find the Council, acting through its Board of Directors, failed to comply with its duty as set forth in Instruction No. 4?

The jury answered yes, and also found that such failure was a substantial factor in causing loss to Ballard. Based on its findings, the jury then awarded the sum of $54,000.00 in damages for monthly condominium fees that it obviously believed she should not have had to pay due to the Council's delays. Interestingly, the jury made no award to Ballard for her cost of moving, property taxes and insurance, mortgage interest, assessments or condo upkeep expenses, no doubt because those items went to her benefit in her choice to move and through the eventual sale of the condo.

In short, the jury awarded what it perceived as equitable damages, which appropriately follow the unwritten equitable terms of any contract of good faith and fair dealing toward one to whom one owes a duty.

However, the language of the instruction is poorly worded. On its face, it appears to ask the jury about the Council's duty to the co-owners, not just its duty to Patricia Ballard as an individual owner.

That is obviously not what was at issue in this case, not what the proof was about, and not what the jury understood the issue to be. There had been no claim that the Council had breached its fiduciary duty to *all* the co-owners as a whole. While the language in the instruction, taken in a vacuum, points to a different set of facts, examination of the whole case shows that there was no confusion on the jury's part about who was before them and exactly what her interest was. I do not believe

this use of the word co-owner instead of owner is significant enough to warrant reversal. And, it further illustrates that the court and possibly the attorneys failed to distinguish in what capacity Ballard was before the court. The jury, however, had no such difficulty.

A condominium association has to act reasonably, as we all do, when doing the things it has agreed to do. It also has to undertake its contractual obligations in good faith. Here, under the master-deed, the Council agreed to maintain the common areas of the building. Under Ballard's theory at trial, her harm was caused by the Council's negligence and lack of good faith in maintaining the building around her windows, which in turn delayed her sale and caused her to continue to pay association fees totaling $54,000.

The majority actually agrees that the jury could have found for Ballard under the theory that the Council failed to comply with its contractual obligations in good faith. The majority then dismisses the jury's finding by stating: "we cannot say that the jury's finding of a breach of fiduciary duty is equivalent to a finding of failure to act in good faith." But the jury did not find a "breach of fiduciary duty," as suggested by the majority. Rather, the jury, as instructed, found that the Council did not "exercise *good faith* and loyalty in conducting the business of the council." (Emphasis added.) Although the instruction may have been intended to lay out the fiduciary duty of the Council, it specifically asked the jury whether the Council had breached a duty of "good faith"—which is exactly what the majority agrees could give rise to the Council's liability. And, as noted above, Ballard had pleaded a breach of contract claim. The jury's finding under this instruction, therefore, is sufficient to make the Council liable under the majority's own theory of the law. I cannot see how the jury's finding under this in- struction differs from the finding that the majority agrees would have allowed the jury to properly find for Ballard.

Holding otherwise strips condominium owners of any remedy for harm caused to them by a corporate condominium association, and allows only claims for harm to all the owners in a condominium project. This ignores the reality that most injuries are not to the owners as a whole, but are instead to individuals. This rule allows abuse of owners who fall into disfavor, as Ballard has claimed, and should also be rejected out of concern for basic fairness. The simple fact is that the jury believed Ballard was mistreated by the Council, which was bound under the master deed. The trial court's instructions were not out of step with the law in this respect; at most, they fail in their description of the relationship at issue.

For that reason, I would reverse the Court of Appeals and reinstate that portion of the trial court's judgment awarding damages for the Council's failure to exercise reasonable care in maintaining the building and failure to act in good faith as a breach of its fiduciary duties.

SCOTT, J., joins.