RENDERED:  SEPTEMBER 30, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-1419-MR


WILLIAM THOMPSON AND THERESA
THOMPSON                                                        APPELLANTS


                    APPEAL FROM PULASKI CIRCUIT COURT
v.            HONORABLE JOHN G. PRATHER, JR., JUDGE
                        ACTION NO. 18-CI-00547


LAKE CUMBERLAND RESORT
COMMUNITY ASSOCIATION, INC.                                        APPELLEE


                            OPINION
                            AFFIRMING

                        ** ** ** ** **

BEFORE:  CLAYTON, CHIEF JUDGE; ACREE AND TAYLOR, JUDGES.

CLAYTON, CHIEF JUDGE:  William and Theresa Thompson appeal from a

Pulaski Circuit Court order granting summary judgment to the Lake Cumberland

Resort Community Association, Inc.  The Thompsons, who own property in the

Lake Cumberland Resort Community, became involved in a dispute with the

Association over liens imposed for their nonpayment of Association dues,

allegations of inadequate delivery of budget and assessment documents by the Association, and the severe erosion of some of their property. The issues on appeal are (1) whether a claim of slander of title can be based on a lien; (2) whether the Thompsons have an independent claim for punitive damages against the Association; and (3) whether equity supports relief from their dues for the eroded property. Upon review, we affirm.

### Factual Background

The Lake Cumberland Resort Community is operated by the Lake Cumberland Resort Community Association, Inc. ("the Association"). The Association is governed by the Revised Declaration of Protective Covenants, Conditions and Restrictions for Lake Cumberland Resort ("the Declaration"). As set forth in fuller detail below, the Declaration requires each owner in the community to pay an annual Assessment of dues, based on an annual budget. The Association is required to deliver a copy of the budget and the Assessment to each owner, and it is empowered to impose a lien on the owner's property in the event of nonpayment.

In regard to the annual budget and Assessment of dues, the Declaration provides:

> It shall be the duty of the Board of Directors to prepare a budget annually covering the estimated Common Expenses of the Association for the ensuing fiscal year . . . . The Common Assessment levied against

each Lot which is subject to the Common Assessment shall be computed by dividing the budgeted Common Expenses by the total number of Lots which are subject to Common Assessments plus the total number of Lots reasonably anticipated to become subject to Common Assessments during the fiscal year. The budget and the amount of the Common Assessment shall be determined by the Board of Directors in their sole and absolute discretion.

The Declaration provides that Common Assessments "shall be levied equally on all Lots[.]" The Declaration contains an "Affirmative Covenant to Pay Assessments[,]" which "impose[s] upon each Owner and each Lot, the affirmative covenant and obligation to pay to the Association all Assessments in respect of the Lot." It further provides that "[n]o diminution or abatement of assessment or set-off shall be claimed or allowed by reason of any alleged failure of the Association or the Board of Directors to take some action or perform some function required to be taken or performed by the Association or the Board of Directors under this Declaration[.]"

The Declaration further requires the Association to "cause a copy of the Common Expense budget and notice of the amount of the Common Assessment to be levied for the following year to be delivered to each Owner at least thirty (30) days prior to the beginning of the fiscal year."

If an owner fails to pay the Assessment, the Declaration provides that the Assessment plus interest, late charges, fines, costs, and attorney's fees may

"become a lien upon the Lot against which each Assessment is made and any other assets of the Owner."

The Thompsons own three lots, Numbers 16, 30, and 30A, in the Lake Cumberland Resort Community. They purchased Lot 16 in 1997 for $110,468.61 and later built a house on it. That property was recently appraised for $124,000. In 1999, they purchased Lots 30 and 30A for a total of $100,000. For purposes of the Assessment only, Lots 30 and 30A were treated as one lot, 30E. Beginning in the spring of 2016, Lots 30 and 30A became subject to severe erosion into the Cumberland River and Lot 30A ceased to exist as a recognizable land mass. As a result, the lots decreased significantly in value. In 2017, the Pulaski County Property Valuation Administrator appraised the value of the lots to be $300 each. Due to the erosion problems, the Thompsons sought a waiver or relinquishment of any claims or dues for Lots 30 and 30A and did not pay any further Assessments.

The Thompsons also began to dispute the method of delivery of the annual budget and Assessment of dues. Before 2016, these documents were delivered to the owners by United States Mail. In 2016, the Association decided to send the annual Assessment notice by e-mail for purposes of improving efficiency and the members were informed of this decision by the Association treasurer. Thereafter, the Association delivered the Assessments via e-mail and placed the budget on the Association website. The Thompsons repeatedly requested a copy of

-4-

their Assessments for all their properties and the budget to be delivered by United States Mail, rather than electronically via e-mail or on the Association's website, citing security concerns. Although the Association took the position that the Declaration did not specify the method of delivery of these documents, Stephen Halpin, the treasurer of the Association, personally mailed the Thompsons' Assessments to them for the years 2017, 2018, 2019, and 2020. The budget is available on the Association's website. In his deposition, William Thompson testified that he has used e-mail and the internet and has accessed the Association website, but nonetheless wants the budgets and Assessments to be sent to him by United States Mail.

In regard to the 2018 Assessment for Lot 16, which was $2,794.82, the Thompsons sent a check in the amount of the previous 2017 assessment, $1,979.60, with the phrase "Full + Final Dues" written on it. The Association, suspecting it was an attempt at accord and satisfaction, returned the check without cashing it.

On February 28, 2017, the Association filed a lien against Lots 30 and 30A for the unpaid 2017 assessment in the amount of $1,144.17. On March 19, 2018, the Association filed a lien against Lots 30 and 30A in the amount of $1,825.98 and for Lot 16 in the amount of $2,794.82.

The Thompsons filed a complaint against the Association in Pulaski Circuit Court on May 21, 2018, asserting that the lien filed against Lot 16 was wrongful and constituted slander of title. They sought a declaration that they do not owe any Assessments or dues of any kind for Lots 30 and 30A; special and actual damages stemming from the lien on Lot 16; the release of all liens on all the lots; and an order requiring the Association to deliver a written dues Assessment for Lot 16 and granting reasonable time to remit payment without any penalty or interest. They also sought punitive damages to punish the Association for its allegedly willful and malicious conduct and to deter a repetition of such conduct in the future.

Following a period of discovery, the Association filed a motion for summary judgment which the trial court granted. This appeal by the Thompsons followed.

**Standard of Review**

In reviewing a grant of summary judgment, our inquiry focuses on "whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996); Kentucky Rules of Civil Procedure ("CR") 56.03. The trial court is required to view the record "in a light most favorable to the party opposing the motion for summary judgment and

all doubts are to be resolved in his favor." *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky. 1991). On the other hand, "a party opposing a properly supported summary judgment motion cannot defeat it without presenting at least some affirmative evidence showing that there is a genuine issue of material fact for trial." *Id*. at 482. "An appellate court need not defer to the trial court's decision on summary judgment and will review the issue *de novo* because only legal questions and no factual findings are involved." *Hallahan v. The Courier-Journal*, 138 S.W.3d 699, 705 (Ky. App. 2004).

### Slander of Title

The trial court held that the Thompsons failed to make a *prima facie* claim of slander of title because the liens did not slander or impugn their title.

A slander of title action in Kentucky has two components. First, the plaintiff must plead and prove "that the defendant has knowingly and maliciously communicated, orally or in writing, a false statement which has the effect of disparaging the plaintiff's title to property"; and, second, "that he has incurred special damage as a result." *Bonnie Braes Farms, Inc. v. Robinson*, 598 S.W.2d 765, 766 (Ky. App. 1980). Special damage is defined as "either a loss by the plaintiff of a sale of his property or a diminution in its fair market value." *Id*.

The trial court held, as a matter of law, that a lien cannot disparage a plaintiff's title to property because, by its very nature, a lien rests on the

assumption that the plaintiff holds title to the property. The trial court relied on the following definition distinguishing a lien from a title: "A lien is not a title to property, but rather a charge upon it. It is a right which the law gives to have a debt satisfied out of the property. It necessarily supposes the title to be in some other person." *Brunner v. Home for Aged of Little Sisters of the Poor*, 429 S.W.2d 381, 382-83 (Ky. 1968). The trial court reasoned that

> [t]he fact that a lien . . . may impact the present marketability of property is not the same as a claim that a fractional interest is owned by a stranger, or that the boundary is subject to a claim of adverse possession or trespass. . . . Title is not "slandered" nor is it "impugned." Title remains and transfer of the title holders' rights can still be accomplished, even though some outstanding commitment must be satisfied in order to remove the possibility of the pertinent property being subjected to collection efforts.

The Thompsons argue that the trial court's reliance on *Bonnie Braes* is misplaced because the Court in that case held that a slander of title claim cannot be premised on a *lis pendens*, which is a notice of pending litigation, not a lien. They also distinguish *Brunner*, on the grounds that it did not involve a slander of title claim but rather the precedence of a city tax lien over the title of remaindermen. The Thompsons argue that Kentucky does recognize slander of title claims premised on a lien, citing cases such as *Seiller Waterman, LLC v. RLB Properties, Limited*, 610 S.W.3d 188 (Ky. 2020). In *Seiller Waterman*, the Kentucky Supreme Court addressed a slander of title claim premised on

-8-

materialmen's and mechanic's liens, but ultimately resolved the case on statute of limitations grounds. The other cases which the Thompsons cite similarly do not directly address the viability of these underlying claims. *See Owners Insurance Company v. Frontier Housing, Inc.*, 291 F. Supp. 3d 810, 815 (E.D. Ky. 2017) (resolved on the grounds that a slander of title claim based on a lien is not covered by an insurance policy); *Montgomery v. Milam*, 910 S.W.2d 237, 240 (Ky. 1995), *overruled by Ballard v. 1400 Willow Council of Co-Owners, Inc.*, 430 S.W.3d 229 (Ky. 2013) (case resolved on statute of limitations grounds).

Whether a lien may form the basis of a claim of slander of title is not resolved in our case law. Even if we proceed on the assumption that it may, solely for purposes of this appeal, the Thompsons have failed to provide evidence of the key elements of the claim. There is no affirmative evidence that the Association "knowingly and maliciously" communicated "a false statement" about the Thompsons' title. *See Bonnie Braes*, *supra*.

Malice is defined as "the intentional doing of a wrongful act to the injury of another, with an evil or unlawful motive or purpose." *Stearns Coal Co. v. Johnson*, 238 Ky. 247, 252, 37 S.W.2d 38, 40 (1931). Actual malice has been defined as "knowledge of falsity or reckless disregard for the truth." *E.W. Scripps Co. v. Cholmondelay*, 569 S.W.2d 700, 704 (Ky. App. 1978). Reckless disregard is described as a "high degree of awareness of . . . probable falsity[.]" *Ball v. E.W.*

*Scripps Co.*, 801 S.W.2d 684, 688 (Ky. 1990) (quoting *Garrison v. State of La.*, 379 U.S. 64, 74, 85 S. Ct. 209, 215, 13 L. Ed. 2d 125 (1964)).

There is no evidence that the Association acted with knowledge of falsity or a high degree of awareness of probable falsity in imposing the liens on the Thompson property. There is no evidence to support the Thompsons' claim that the Association filed the liens as punishment for their insistence that the Association follow the Covenants in the Declaration. There is no dispute that the Thompsons simply did not pay the Assessments as required under the Declaration. The Association's refusal to accept a check in a lower amount which purported to settle the Assessment is not evidence of malice on the Association's part, but rather a well-founded apprehension that acceptance of the check would bar the Association from recovering the full amount of the Assessment. The Thompsons can show no evidence that the liens constitute false statements or that the Association acted with malice in imposing them.

Additionally, the Thompsons have failed to show evidence of special damages as required to support the second element of an action for slander of title. To succeed they must show either a loss of a sale of the property or a diminution of its fair market value. *Id*. There is no evidence that the Thompsons tried to sell their property, much less that they failed to sell the property because of the lien. Their only tangible claim for the diminution of value is the existence of the lien

-10-

itself on the property. An appraisal of Lot 16 in 2021 does not mention any diminution in value attributable to the lien. The costs and fees which the Thompsons have incurred in attempting to remove the lien do not meet the definition of a claim for special damages.

### Punitive Damages

The Thompsons' next argument relates to their claim that the trial court failed to consider evidence that the conduct of the Association towards them was malicious and vindictive, justifying a claim for punitive damages. They claim the liens were intended to punish them; that the Association refused to communicate with them or answer their legitimate questions, refused their tender of dues payments for Lot 16, and that the posting of the annual budgets on the website did not meet the Association's obligations under the Declaration.

But punitive damages cannot be awarded in isolation. Although a claim for punitive damages may be tried on its own, there must be a viable underlying cause of action for compensatory damages. "Without a factual allegation of actual compensatory damages, punitive recoveries cannot be sustained. . . . [I]f a right of action exists that is, if the plaintiff has suffered an injury for which compensatory damages might be awarded, although nominal in amount he may in a proper case recover punitive damages." *Lawrence v. Risen*, 598 S.W.2d 474, 476 (Ky. App. 1980) (internal quotation marks and citation

-11-

omitted).  An appellant who fails to assert any claim on which actual damages could be awarded is precluded from seeking exemplary ones.  *Id.  See also Commonwealth Dep't of Agriculture v. Vinson*, 30 S.W.3d 162, 166 (Ky. 2000) ("Where the plaintiff has suffered an injury for which compensatory damages, though nominal in amount may be awarded, the jury may in a proper case, award punitive damages as well.").  The Thompsons have not asserted a claim for which they might receive even nominal compensatory damages and consequently punitive damages are not available.

## Equitable Relief

Finally, the Thompsons argue that they are entitled to equitable relief from the payment of the Assessment on Lots 30 and 30A due to the damage from erosion which has made a portion of the land unusable.  The trial court denied the availability of equitable relief in reliance on the Declaration, which states that "[t]he liability for Assessments is personal to the Owner and may not be avoided by waiver of the use of enjoyment of Common Area or Exclusive Common Area, or by abandonment of the Lot for which the Assessments are made."  On this basis, the court ruled that the Thompsons could not avoid Assessment payments by waiver.  It further relied on the principle of *caveat emptor* in real estate transactions to rule that equitable relief was not appropriate.

The Thompsons argue that the Association should not be permitted to collect dues for lots which are no longer of any use, particularly as the Association has not attempted to mitigate the erosion problem. They further contend that they did not waive or abandon Lots 30 and 30A but rather the lots abandoned them through erosion.

There is no evidence that the Association has a duty to mitigate property erosion. No statement of such a duty is found in the Declaration or elsewhere. There is no evidence that payment of the Assessment is contingent on such action by the Association. The Declaration expressly provides that "[n]o diminution or abatement of assessment or set off shall be claimed or allowed by reason of any alleged failure of the Association or the Board of Directors to take some action or perform some function required to be taken or performed by the Association or the Board of Directors under this Declaration, the By-Laws, or the Articles[.]"

There is no basis for equitable relief by reforming the terms of the Declaration to enable the Thompsons to avoid their obligation to pay the Assessments. Allowing the Thompsons to evade payment would be inequitable to other owners in the community who are abiding by the terms of the Declaration.

## **Conclusion**

For the foregoing reasons, the summary judgment granted by the Pulaski Circuit Court is affirmed.


ALL CONCUR.


BRIEFS FOR APPELLANTS:

Winter R. Huff
Somerset, Kentucky

BRIEF FOR APPELLEE

Ian A. Loos
Bowling Green, Kentucky

Joseph F. Grimme
Ft. Thomas, Kentucky