**Lois A. PRICE, Appellant,**

v.

**FIRST FEDERAL SAVINGS BANK, Appellee.**

**No. 88–CA–408–MR.**

Court of Appeals of Kentucky.

Feb. 7, 1992.

Neil A. Banks, Louisville, for appellant.

David Van Zant, Huddleston & Van Zant, P.S.C., Elizabethtown, for appellee.

Before MILLER, HOWERTON and McDONALD, JJ.

HOWERTON, Judge.

Lois A. Price appeals from a judgment of the Hardin Circuit Court finding her indebted to First Federal Savings Bank for $54,196.19 plus interest from December 23, 1986. The debt was based on a note, and the note was secured by a real estate mortgage on property in Elizabethtown. The property was ordered to be sold to satisfy the debt. Price argues that the bank established a pattern of accepting late payments over the course of this loan which constituted a waiver or estoppel of its right to exercise the acceleration provision of the mortgage. We find this argument to be untenable and affirm the judgment. Although the Bank correctly argues that CR 8.03 requires such defenses as waiver, estoppel, or laches to be affirmatively pled, which in this case were not, we will nevertheless briefly review the facts and argument on the merits as presented by Price.

The note for $40,800 and mortgage were executed on November 15, 1979, by Lois Ingle (now Price) and her husband, Tony. The loan was frequently delinquent, and the Bank accepted late payments in varying amounts.

Price moved from Elizabethtown and thereafter rented her property. In August 1981, she filed bankruptcy while living in Arkansas. At that time she owed $1,480 in arrears, and the Bank received no payments until April 1982, when the bankruptcy trustee paid $4,175.60. Additional payments were made in May and October 1982, and the bankruptcy action was dismissed on December 10, 1982.

Price made a substantial payment in January 1983 which brought her account current. Thereafter, payments were only made periodically, and the Bank was required on various occasions to purchase insurance coverage to protect its security. In the months which followed, there were small payments, no payments, and bad check payments, and on June 29, 1984, the Bank filed this foreclosure action. The Bank applied the acceleration provision of paragraph 7 of the mortgage and claimed the entire unpaid balance then due and payable. Paragraph 7 provides, in pertinent part, as follows:

> (7) In the event of a default by the obligors in the payment of any of the installments required to be paid on the note secured hereby for a period of thirty (30) days after same is due; or in the event of their failure to pay any and all premiums for insurance required hereunder, ... the Association may, at its option, declare the entire debt secured hereby to be immediately due and payable and enforce this mortgage without notice to the obligors.

We also note at this time that paragraph (8) of the mortgage also provides, in pertinent part, as follows:

> (8) It is expressly agreed that failure of the Association to exercise any of its options to precipitate the debt secured because of violation of this agreement

shall not constitute a waiver of the right to exercise such option. ... and in the event of a waiver of any one of the obligations assumed by first parties hereunder it shall not at any time thereafter be held to be a waiver of any of the terms or conditions hereof, except such as are expressly waived.

In November of 1984, Price filed another petition in bankruptcy, this time in Texas. Pursuant to a plan and order from the bankruptcy court, the Bank began receiving and accepting some payments. The bankruptcy was dismissed on June 12, 1986, at which time Price owed $51,500, including an arrearage of $11,285. The Bank continued pursuit of its foreclosure action and obtained judgment on February 2, 1988.

Price filed her appeal on February 22, but by June, she was again attempting to forestall any further action and moved to abate the appeal because of another attempt at bankruptcy in Texas. On July 12, 1988, she was ordered to notify this Court 10 days from the date the bankruptcy court entered an order terminating the proceedings. Notice was never given, and on February 21, 1991, this Court on its own motion ordered Price's counsel to file a current status report of the bankruptcy action. On March 26, 1991, this case was returned to our active docket.

■ Price admits that there is no case law in Kentucky regarding the effect of a mortgagee's acceptance of late payments which would constitute a waiver of any right to accelerate and foreclose on the unpaid debt secured by the mortgage. This is not difficult to understand, because if Price were correct, no mortgagee could ever act with any leniency with its debtor for fear of being precluded from foreclosing at an appropriate time. The horror of this case indicates what can happen with too many delays or blockages of foreclosure proceedings. What was originally a debt of $40,800 is now a substantially larger total debt. We certainly do not fault the bank for accepting payments from time to time or from delaying its foreclosure action. It is clear that Price did not want to lose her property, and the Bank was certainly being realistic in accepting whatever payments it could receive. What apparently was happening was that Price was collecting rent but refusing to pay the Bank for the property.

The language in paragraphs (7) and (8) of the mortgage could not be clearer in that the Bank is entitled to claim the entire amount due upon default or delinquency extending over more than 30 days from the date certain payments are due, and that any individual waiver of this option shall not constitute a waiver of the right to exercise that option for future violations of the terms of the mortgage. If the agreement means anything, it means that the Bank can do exactly what it did.

Although there are no Kentucky cases on point, other jurisdictions have determined that where a mortgage contains a nonwaiver clause, such as the one set forth in paragraph (8) of this mortgage, the mortgagee's acceptance of late payments does not constitute a waiver of any subsequent defaults. *See e.g., McCool v. Decatur County Bank of Greensburg,* 480 N.E.2d 596 (Ind.Ct.App., 1985); *First Federal Savings & Loan Ass'n of Gary v. Stone,* 467 N.E.2d 1226 (Ind.Ct.App., 1984); and *Postal Savings & Loan Ass'n v. Freel,* 10 Kan.App.2d 286, 698 P.2d 382 (1984).

Price was in default on her mortgage payments at the time this action was filed in 1984. She remained in default when her bankruptcy action was dismissed in 1986, and she continued in default at the time the judgment of the Hardin Circuit Court was entered. The Bank had every right to initiate and conclude the foreclosure and sale of the mortgaged property.

The judgment of the Hardin Circuit Court is affirmed.

All concur.