**Stephen B. CATRON, Appellant,**

**v.**

**CITIZENS UNION BANK, Appellee.**

No. 2005–CA–001420–MR.

Court of Appeals of Kentucky.

Sept. 1, 2006.

Discretionary Review Denied by Supreme Court Aug. 15, 2007.

Brian K. Pack, Glasgow, KY, for appellant.

Helene Gordon Williams, Louisville, KY, for appellee.

1. Senior Judge David C. Buckingham sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

Before COMBS, Chief Judge; GUIDUGLI, Judge; BUCKINGHAM,[1] Senior Judge.

## OPINION

BUCKINGHAM, Senior Judge (Assigned).

Stephen B. Catron appeals from a summary judgment of the Warren Circuit Court in favor of Citizens Union Bank. Over a period of about one year, the Bank accepted several late loan payments on a promissory note executed by Catron. The Bank hired legal counsel to collect the principal amount on the note with interest and late charges after Catron again defaulted on his monthly payment. The Bank subsequently discovered that shortly after executing the note, Catron had the shares he pledged as collateral reissued in his name.

The trial court entered summary judgment in favor of the Bank, and it subsequently denied Catron's motion to alter, amend, or vacate. On appeal, Catron argues that issues of fact exist for trial regarding the course of dealing established by the Bank's notices of default and acceptance of late payments. He also argues that issues of fact exist about whether the Bank agreed to reinstate his loan for $8,524.80, as he claims, or for $10,000, as the Bank claims. Finally, Catron argues that the terms of the promissory note are unconscionable and against public policy. We affirm.

Catron is an attorney who was formerly licensed to practice in Kentucky.[2] In October 1999, Catron entered into a loan

2. On July 12, 2004, the Kentucky Supreme Court temporarily suspended him from the practice of law for misappropriating funds. See *Inquiry Comm'n v. Catron*, 141 S.W.3d 13 (Ky.2004).

agreement with the Bank [3] by executing a promissory note and pledging 375 shares of Ohio County Bancshares, Inc., as collateral. The note was renewed in February 2001. On February 11, 2003, Catron renewed the promissory note again, this time for the principal amount of $192,069.27. Loan payments were to be paid monthly in the amount of $2,837.30 beginning March 10, 2003.

The note included provisions that detailed the Bank's remedies in the event Catron defaulted on his payments. The note stated, in part, as follows:

Upon my default, at the Lender's option and without any demand or notice to me, the Lender may treat this loan in default and do any one or more of the following: (a) Declare all amounts I owe the Lender under this Agreement immediately due and payable . . .

The note also stated the following:

WAIVER OF CERTAIN RIGHTS—If the Lender delays enforcement or decides not to enforce any of the provisions of this Agreement, including my Agreement to make timely payments, it will not lose its right to enforce the same provisions later nor any other provisions of this Agreement. I waive the right to receive notice of any waiver or delay or presentment, demand, protest, or dishonor. I also waive any applicable statute of limitations to the full extent permitted by law and I waive any right I may otherwise have to require the Lender to proceed against any person or security before suing me to collect this loan.

Catron arranged for his bank (BB & T) to wire the monthly payments electronically from his checking account there to the Bank. Catron's payments were frequently late, and the Bank notified him several times telephonically of its failure to receive timely payment. Over the next year, the Bank charged Catron late payment penalties 12 separate times for payments outside the 10–day grace period.

On or about May 25, 2004, the Bank became aware that shortly after pledging the 375 shares of Ohio County Bancshares to the Bank, Catron applied for a new stock certificate in his name on the ground that he had lost the certificate. The Bank retained counsel to take legal action against Catron. In response to Catron's efforts to satisfy the Bank and avoid legal action, the Bank sought assurance from Catron that his ability to maintain his account was not compromised. It claims it came to an agreement with Catron whereby it would not accelerate the note if Catron paid the Bank $10,000 and replaced the collateral that he had reissued in his name.

On June 14, 2004, Catron sent a letter and partial payment of $5,661.90 to the Bank. He also stated that another $2,900 would be transferred from his checking account. The Bank rejected the payments and returned the check to Catron's attorney.

On June 16, 2004, the Bank filed a complaint in the Warren Circuit Court seeking to accelerate the note for the remaining principal amount of $173,437.63, with interest to June 15, 2004, of $2,423.10, late charges of $50.00, and interest from June 15, 2004, at an annual percentage rate of 24.00%.

On November 1, 2004, the Bank filed its motion for summary judgment. The court granted that motion on April 29, 2005. On May 9, 2005, Catron filed a motion to alter, amend or vacate the summary judgment. That motion was denied on June 20, 2005. This appeal by Catron followed.

**3.** The Bank was then known as the Peoples State Bank.

■ Catron first argues that there existed a genuine issue of material fact regarding whether or not a course of dealing had been created because of the Bank's prior notices of default. He claims that the Bank's past dealings in that regard caused him to reasonably rely on such notices, and since he did not receive notice that there was a problem with his account, the Bank should have been estopped from asserting non-payment.

The standard of review for a summary judgment is well established. CR[4] 56.03 provides in part that "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Appellate courts will not defer to the trial court's decision on summary judgment, and the issue will be reviewed *de novo* because only legal questions are involved. *Hallahan v. The Courier Journal,* 138 S.W.3d 699, 705 (Ky.App.2004). The appellate court is to determine whether the trial court erred by concluding that there were no genuine issues as to any material fact and that the moving party was entitled to a judgment as a matter of law. *Scifres v. Kraft,* 916 S.W.2d 779, 781 (Ky.App.1996). "The court must view the record in the light most favorable to the nonmovant and resolve all doubts in his favor." *Hallahan,* 138 S.W.3d at 705.

"[T]he movant should not succeed unless his right to judgment is shown with such clarity that there is no room left for controversy." *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.,* 807 S.W.2d 476, 482 (Ky. 1991). "Only when it appears impossible for the nonmoving party to produce evidence at trial warranting a judgment in his favor should the motion for summary judgment be granted." *Id.* If the movant bears its burden of convincing the court that no genuine issue of fact is in dispute, the burden shifts to the party opposing the motion to present "at least some affirmative evidence showing that there is a genuine issue of material fact for trial." *Id.* "The party opposing summary judgment cannot rely on their own claims or arguments without significant evidence in order to prevent a summary judgment." *Wymer v. JH Properties, Inc.,* 50 S.W.3d 195, 199 (Ky.2001).

■ In the event a course of dealing between the parties and the express terms of the agreement cannot be reasonably construed as consistent with each other, the express terms of the agreement control the course of dealing. KRS[5] 355.1–205(4). Further, a secured lender's acceptance of late payments generally does not constitute a waiver of the right to enforce the terms of a security agreement. *See Price v. First Fed. Sav. Bank,* 822 S.W.2d 422, 424 (Ky.App.1992).

Catron likens the case at hand to *Howard v. Motorists Mut. Ins. Co.,* 955 S.W.2d 525 (Ky.1997). In that case, Howard frequently sent late premiums to her insurance company after the policy had expired for failure to pay. On at least two of those occasions, Motorists Mutual continued coverage by issuing a new policy. Shortly after her policy had again lapsed, Howard sent Motorists Mutual another payment. She was subsequently involved in an automobile accident. Motorists Mutual rejected Howard's insurance claim and she sued to establish her coverage. The Kentucky Supreme Court held that Motorists Mutual was estopped from denying Howard's cov-

**4.** Kentucky Rules of Civil Procedure.

**5.** Kentucky Revised Statutes.

erage because of its past dealing with her, which gave rise to her reasonable detrimental reliance that her late payment would renew her coverage. *Id.* at 529.

On the other hand, the Supreme Court in *Howard* based its decision in part on the fact that Howard was not given notice of the company's "frequent lapse" policy, which was an internal practice to deny or terminate coverage after a certain number of lapses. The court stated, "the lack of notice of those practices to Appellant establish the second and third elements of estoppel[.]" *Id.* at 528.

The *Howard* case is distinguishable from the present case. Here, Catron executed a promissory note in which he expressly waived notice of default. He also agreed that the Bank could choose to assert its right to accelerate the note even after it accepted late payments. Since Catron received notice of the terms of the loan agreement, his reliance on the *Howard* case is misplaced. Therefore, there is no genuine issue of fact as to whether or not a course of dealing between Catron and the Bank was established by the Bank's acceptance of late payments and past practice of notifying Catron before considering his account in default.

■ Catron next argues, without citing any authority, that the waiver of notice provision is unconscionable and against public policy. He claims that the "failure to have a notice of default provision as a prerequisite to acceleration or foreclosure on a Promissory Note precludes the other party of an opportunity to remedy the alleged default and meet his obligation." He further asserts that without such a provision, the debtor would be subject to the arbitrary actions of the creditor.

■ "An unconscionable contract has been characterized as one which no man in his senses, not under delusion, would make, on the one hand, and which no fair and honest man would accept, on the other." *Conseco Fin. Serv. Corp. v. Wilder,* 47 S.W.3d 335, 341–42 (Ky.App.2001)(internal quotations omitted). "The doctrine is used by the courts to police the excesses of certain parties who abuse their right to contract freely." *Id.* "It is directed against one-sided, oppressive and unfairly surprising contracts, and not against the consequences per se of uneven bargaining power or even a simple old-fashioned bad bargain." *Id.*

■ Notice of dishonor of a negotiable instrument can be waived if proven through clear and satisfactory proof. *See Baker v. Valentine,* 216 Ky. 801, 288 S.W. 771, 772 (1926). Furthermore, KRS 355.3–504(2) provides that notice of dishonor is excused if "[t]he party whose obligation is being enforced waived notice of dishonor." If so agreed, and in any event after default, a secured party *"[m]ay* notify an account debtor or other person obligated on collateral to make payment or otherwise render performance to or for the benefit of the secured party[.]" KRS 355.9–607(1)(a). (Emphasis added.)

Here, Catron entered into the loan agreement at arm's-length and executed the promissory note with notice of the relevant acceleration provisions. Catron defaulted on his payments numerous times, and he withdrew the collateral securing the Bank's interest. Thus, it cannot be said that the Bank's actions in accelerating the note were arbitrary or surprising to him. In short, we reject Catron's argument because he waived notice of dishonor and also cited no authority to support his argument. Therefore, the trial court properly rejected Catron's argument that the terms of the note were unconscionable.

■ Finally, Catron argues for the first time on appeal that an issue of fact

existed about whether the Bank agreed to reinstate his loan for $8,524.80, as he claims, or for $10,000, as the Bank claims. "It goes without saying that errors to be considered for appellate review must be precisely preserved and identified in the lower court." *Skaggs v. Assad, By and Through Assad,* 712 S.W.2d 947, 950 (Ky. 1986). The appellant's brief "shall contain at the beginning of the argument a statement with reference to the record showing whether the issue was properly preserved for review and, if so, in what manner." CR 76.12(4)(c)(v).

Catron has not shown where and in what manner this argument was preserved for appeal. Furthermore, he raises it for the first time in his reply brief. "The reply brief is not a device for raising new issues which are essential to the success of the appeal." *Milby v. Mears,* 580 S.W.2d 724, 728 (Ky.App.1979). Therefore, we will not consider Catron's argument in this regard.

The summary judgment of the Warren Circuit Court in favor of the Bank is affirmed.

ALL CONCUR.