RENDERED: JUNE 16, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0548-MR
AND
NO. 2021-CA-0598-MR

JASON HANS AND NATALIYA
ROWLEY                                    APPELLANTS/CROSS-APPELLEES


|         | APPEAL AND CROSS-APPEAL FROM |
|---------|------------------------------|
| v.      | FAYETTE CIRCUIT COURT        |
|         | HONORABLE THOMAS L. TRAVIS, JUDGE |
|         | ACTION NO. 19-CI-03322       |


THE VILLAS AT ANDOVER
HOMEOWNERS ASSOCIATION,
INC.                                      APPELLEE/CROSS-APPELLANT


OPINION AND ORDER
AFFIRMING

** ** ** ** **

BEFORE: EASTON, JONES, AND LAMBERT, JUDGES.

LAMBERT, JUDGE: Jason Hans and Nataliya Rowley have appealed, and the

Villas at Andover Homeowners Association, Inc., has cross-appealed, from the

orders of the Fayette Circuit Court entered July 6, 2020, and April 27, 2021,

addressing the enforcement of restrictions related to short-term rentals, the imposition of fines, and the award of attorney fees. We affirm.

Jason Hans is a resident of Fayette County, Kentucky, and in October 2018 he purchased property on Andover Village Place in the Villas at Andover neighborhood. The Villas at Andover is governed by a homeowners association (the Villas at Andover Homeowners Association, Inc. (the HOA)), which is a non-profit Kentucky corporation formed in 1995 with a principal place of business in Lexington. A Declaration of Covenants, Conditions, and Restrictions (CC&R) was filed with the Fayette County Clerk's Office in 1990, followed by a supplemental declaration later that year and an amended and restated declaration in 2006 (Amended CC&R). At a Special Board of Directors Meeting in March 2019, the board voted to ban the use of residences in the HOA as short-term rentals based upon the Supreme Court of Kentucky's recent decision in *Hensley v. Gadd*, 560 S.W.3d 516 (Ky. 2018).

After Hans purchased the property, he rented it through services such as Airbnb on a one-night, two-night, weekend, or weekly basis. Hans received a letter from the HOA on March 20, 2019, informing him that short-term rentals were incompatible with the residential nature of the neighborhood and were prohibited. The letter went on to state that the HOA reserved the right to enforce the restrictions by restricting a lot owner's or resident's use of common areas and

services, imposing fines, or filing a judicial action for injunctive relief and monetary damages, including costs, expenses, or attorney fees incurred in enforcing the restrictions. Hans believed that banning the use of residences as short-term rentals in the Villas at Andover by the HOA was in excess of the HOA's authority under the CC&R and Amended CC&R. He responded to the HOA's letter indicating that he disagreed with the application of the restriction and that he did not believe he was in violation.

On April 3, 2019, the HOA imposed a fine on Hans in the amount of $1,188.00 (later reduced to $594.00). Three days later, Hans, through his attorney, requested an appeal of the fines. In May, the HOA responded, through counsel, that the appeal had been denied and that fines would continue to accrue. In September of that year, the HOA sent another letter to Hans stating that the amount of fines he owed totaled $19,332.00.

On September 16, 2019, Hans filed a verified complaint alleging that the HOA had breached its fiduciary duty to him. He claimed the HOA owed him duties of care, of loyalty, and to act within the scope of its authority, and that it had disregarded these duties when it acted adversely to Hans' interest and in its own self-interest. Hans sought compensatory damages, attorney fees, and costs. In its answer, the HOA denied the allegations raised in the complaint and raised several affirmative defenses. In November 2019, the court permitted Hans to file an

amended complaint to add his wife, Nataliya Rowley, as a plaintiff, as she was a co-owner of the property and was named on the deed. We shall refer to Hans and Rowley, collectively, as "Hans" for ease of understanding.

In addition to filing an answer to the amended complaint, the HOA filed a counterclaim against Hans seeking a declaration pursuant to Kentucky Revised Statutes (KRS) 418.005 *et seq.*, and Kentucky Rules of Civil Procedure (CR) 57, that renting the property on a short-term, transient basis was prohibited. It also sought an injunction against renting the property on a short-term, transient basis pursuant to CR 65. Finally, the HOA sought to recover the fines it had assessed against Hans for violating the restrictions as well as attorney fees and court costs. Hans disputed the allegations in the counterclaim in his answer.

In May 2020, the HOA filed a motion for a judgment on the pleadings pursuant to CR 12.03, seeking dismissal of Hans' claim for breach of fiduciary duty and a declaration that the restrictions prohibited him from renting the property on a short-term, transient basis. The HOA sought dismissal of Hans' claim as Kentucky law does not recognize the existence of a fiduciary duty between a homeowners association and the individual property owners, citing *Ballard v. 1400 Willow Council of Co-Owners, Inc.*, 430 S.W.3d 229 (Ky. 2013). As to its declaratory action, the HOA argued that controlling precedent held that a property

restriction that limits use to residential purposes prohibits short-term, transient rentals, citing *Hensley*, *supra*.

In his response, Hans stated that he had discussed purchasing the property with then-board member Gregg Slater, who told him that the HOA board had not voted to prohibit short-term rentals. He went ahead with the purchase and stated he had received written confirmation from HOA President Timothy Shuck in September 2018 that an attempt to restrict rentals had failed to pass at the January 2015 annual meeting. Slater told him in September 2018 that no members of the HOA board had voiced any objection to short-term rentals. As to his breach of fiduciary claim, Hans stated he would be filing a motion to amend his complaint to include a breach of contract claim as set forth in *Ballard*, *supra*, as well as a third-party breach of fiduciary duty claim against Shuck, in his individual capacity as President of the HOA Board of Directors, and the HOA Board of Directors. Hans also disputed that the HOA was entitled to a declaratory judgment based upon *Hensley*, *supra*, citing waiver and equitable estoppel grounds.

In its reply, the HOA noted that Hans admitted that it did not owe any fiduciary duties to the members; therefore, his claims should be dismissed. The HOA also disputed that it had waived the restrictions, or that equitable estoppel was warranted.

The circuit court heard arguments from the parties, and in an order entered July 6, 2020, it granted the HOA's motion for a judgment on the pleadings. It first held that there was no fiduciary duty between an HOA and the individual property owners under Kentucky law and, accordingly, dismissed Hans' causes of action against the HOA. Second, it agreed with the HOA that short-term rentals were prohibited by the residential restrictions found in Article V, Section 1, of the Amended CC&R and therefore granted the HOA's motion on Count 1 of its counterclaim. That section provides:

> SECTION 1. PRIMARY USE RESTRICTIONS. No Lot shall be used except for Private single family residential purposes. No structure shall be erected, placed or altered or permitted to remain on any Lot except one single family dwelling designed for the occupancy of one family (including any employees living on the premises), not to exceed two stories in height and containing an attached garage for the sole use of the owner and occupants of the Unit. All Members shall use their Lots in conformance with all federal, state, and local statutes.

Based upon this restriction and citing to *Hensley*, *supra*, the court held:

> Virtually identical residential use restrictions have been found to be lawful and enforceable against property owners seeking to rent his property on a short-term, transient basis. Interpretations of such agreements are matters of law for the court to decide. The terms here are unambiguous, and rationally related to serving a purpose to promote legitimate goals of neighborhood stability. Arguments such as waiver and estoppel raised by the Plaintiff cannot as a matter of law defeat the HOA's right

to enforce. Alleged arbitrary enforcement does not render such covenants unenforceable.

(Footnotes omitted.) The court declared that the property restrictions of record prohibited Hans from renting his property on a short-term, transient basis, which included one-night, two-night, weekend, or weekly rentals. The court reserved ruling on issues related to damages, including costs and attorney fees.

Less than two months later, on August 21, 2020, the HOA moved the court to enter an order requiring Hans to show cause why he should not be held in contempt for failing to comply with the July 6 order that prohibited him from renting the property on a short-term, transient basis. Hans had continued to allow rentals on a short-term basis, and future rentals had been reserved in the months of August and September. In response, Hans stated that any short-term rentals were pre-existing and that no new reservations had been made, which was consistent with the order. He had been in Alaska on sabbatical for two months and had not been available until his return in mid-August 2020. He said he did not willfully violate the court's order.

The same day, the HOA filed a motion for summary judgment as to Hans' personal liability to pay the fines. Through August 8, 2020, Hans owed $90,480.61 in fees and costs, including legal fees, which would continue to accrue. Hans objected to the motion, arguing that he had affirmatively pled a waiver defense as the HOA had acquiesced in the use of property in violation of the

-7-

restrictions. Hans also argued that the HOA did not have the authority to levy fines against him pursuant to the Amended CC&R; it could only levy annual and special assessments. Finally, he argued that because he was not a party to the original covenants, KRS 411.195 prevented the HOA from collecting attorney fees from him.

On September 1, 2020, Hans moved for leave to file a second amended complaint, in which he alleged causes of action for breach of fiduciary duty on the HOA's part and for breach of the covenant of good faith and fair dealing. In addition, Hans moved the court for a temporary injunction to prevent the HOA from levying fines against him and from preventing his short-term rental of the property as long as his activities did not create a nuisance to residents. He also sought attorney fees and costs. The HOA objected to the motion for a temporary injunction and sought its own attorney fees.

The court heard arguments from the parties on September 4, 2020, and entered an order ruling on the pending motions a few days later. It denied Hans' motion to file an amended complaint and for a temporary injunction, denied the HOA's motion for summary judgment, and held the motion to show cause in abeyance. The parties were referred to mediation, and an evidentiary hearing was scheduled to be held several months later. In October, the parties filed a joint report indicating that they had not resolved the matter in mediation.

The court held an evidentiary hearing on January 19, 2021, to consider the HOA's motion to show cause as well as the factual and legal basis for the HOA's claim for damages (including fines, costs, and attorney fees). Witnesses included Hans as well as current and former HOA residents and board members.

Hans filed a post-hearing brief on February 8, 2021, arguing that the HOA lacked authority to impose fines and expenses against him and that the court should deny the motion for sanctions for violating the July 6, 2020, order because the violation was unintentional. Hans had been unavailable except by satellite phone when the order was entered. The HOA filed its brief later that month. It argued that the evidence presented at the hearing established that Hans had continued to operate the property as a short-term rental business after entry – and with knowledge – of the July 6, 2020, order. The HOA also stated that the exhibits attached to Hans' post-hearing brief had not been authenticated or admitted at the evidentiary hearing and, therefore, should not be considered. It went on to argue that the fines were enforceable and that it had the authority to impose the fines to enforce the restrictions. The HOA asserted that the governing documents granted it "the breadth and discretion to enforce the Restrictions through various means, including fines." As to Hans' violation of the July 6, 2020, order, the HOA argued that Hans did not dispute that he continued to rent the property on a short-term

basis after he knew of the order, and he had not provided any justification for his non-compliance. In all, the HOA sought to recover $59,096.27 in fines through July 31, 2020 (the amount Hans had earned during that time period); $39,266.40 in attorney fees and costs (including $26,835.40 in post-order attorney fees); and $19,033.84 for post-order revenue from transient rentals.

By order entered April 2, 2021, the Court denied the HOA's motion to strike Hans' exhibits that had been filed prior to the hearing but had not been authenticated or sought to be admitted at the hearing. The court opted to liberally construe the rules in favor of allowing the exhibits to remain, noting that it would be able to assess their relevance, validity, and authenticity. However, it permitted the HOA 10 days to file a written objection as to the authenticity of any document. The HOA did not appear to file a written objection.

On April 27, 2021, the court entered an order ruling on the pending issues presented at the evidentiary hearing. The court stated that at the evidentiary hearing, "the HOA's presentation focused on the revenues the Owners derived from transient rentals since the first cease and desist letter on March 20, 2019, including such revenues generated by the Owners from rentals that occurred after the Court's July Order. The HOA's counsel also submitted affidavits in support of the HOA's claim for an award of attorney fees." As to Hans' presentation at the hearing, the court stated:

[T]he Owners sought to revisit their claims of waiver/estoppel by reintroducing the statements allegedly made by Mr. Slater around the time Mr. Hans purchased the property. The statements, according to the Owners, induced Mr. Hans to purchase the home and led him to believe to his detriment that there would be no problems associated with renting the Property. Mr. Hans also discussed the expenses associated with renting the Property, thereby claiming that the rental revenue and income figures procured by the HOA are misleading as they don't reflect the true net income generated by the property. Accounting for overhead and expenses, he explained, his net income from the rentals was not significant. Additionally, Mr. Hans addressed the continued transient rentals following the Court's July 6, 2020 Order, explaining that he was in the Alaskan wilderness during the issuance of the Order. According to Mr. Hans, the area he was visiting is remote and contact with civilization is limited; resultantly, he was unable to receive notice of the Court's Order until weeks later. However, subpoenaed Airbnb and Vrbo records show that after a hiatus in rentals beginning on June 4, 2020, Mr. Hans began to rent the Property again on July 17, 2020. Therefore, the Court finds that Mr. Hans knew or should have known of the Order within a few weeks after its issuance. Regardless, Mr. Hans acknowledged that he continues to rent the Property, albeit in a different manner. Instead of charging renters daily, he charges on a monthly basis and at a reduced rate, while also permitting renters to leave early. The Court's interpretation is that this is a scheme that attempts to circumvent the HOA's restrictions on rentals lasting less than thirty days.

In the July 2020 Order, this Court declared that the HOA's restrictions prohibit renting the Property "on a short-term, transient basis, including one-night, two-night, weekend, or weekly rentals." Given the aforementioned hiatus in rentals between June and July of 2020, it appears that Mr. Hans waited until the Court's

-11-

Order before continuing his rental business. Upon learning of the Order, Mr. Hans likely devised the scheme in an attempt to appear in compliance with the Order, when in fact he has not been compliant. Lastly, the Plaintiffs' counsel challenged any award of attorney fees, noting that counsel for the HOA does other work for the HOA that is unrelated to this case. Therefore, he asserted, the Court should not award the full attorney fees requested, absent detailed invoices submitted by the Defendant.

The court granted the HOA's motion, in part, and awarded it: 1) $15,206.10 in fines; 2) $30,000.00 in attorney fees, which included the costs the HOA incurred to enforce the restrictions Hans had violated; and 3) $12,000.00 as a civil contempt sanction imposed by the court against Hans due to his continued short-term rental of the property after the July 6, 2020, order was entered.

The court determined that "[w]hile the HOA possesses the authority to enforce its restrictions, it is not authorized to issue *fines* under any of its governing documents." Therefore, the HOA could not impose fines on Hans until the legal dispute had been adjudicated on July 6, 2020, and Hans could only be fined for violations he committed after that order was entered. The court held that the HOA was entitled to the imposition of a fine against Hans for violations of the restrictions that occurred from July 6, 2020, through December 31, 2020. The court based the fine on Hans' net revenues from short-term rentals, which it stated was "fair, reasonable, and appropriate under the circumstances."

-12-

As to the award of attorney fees, costs, and expenses, the $30,000.00 the court awarded was for expenses through February 22, 2021. The court rejected Hans' argument that attorney fees were not payable under KRS 411.195, stating that it was immaterial that he was not the original party to the CC&R. The court had no reason to doubt the truthfulness of the recorded fees, noting that "[u]ndoubtedly, extensive litigation expenses were incurred by the HOA in order to enforce its valid restriction against transient rentals." But the court did not award the full amount sought because it did not have "the actual invoices for a detailed review of the attorney fee structure and work specifically completed on this matter," noting that the firm had been generally retained by the HOA to work on other unrelated matters.

Finally, the court held Hans in contempt for his refusal to abide by the July 6, 2020, order, noting his attempt to circumvent the ruling. It fined Hans $2,000.00 per month for each month he continued to rent the property "in a matter knowingly and purposefully inconsistent" with its order. The total fine was $12,000.00 for the months of July through December 2020.

Hans appealed from the July 2, 2020, and April 27, 2021, orders. And the HOA cross-appealed from the April 27, 2021, order as well as all prior orders and rulings made final by that order.

-13-

Before we address the merits, we must consider the HOA's motion to strike Hans' brief or dismiss his appeal for failure to procedurally comply with CR 76.12, which was passed to the merits panel. Kentucky Rules of Appellate Procedure (RAP) 32 now provides the procedure for the organization and content of an appellate brief. That Rule provides, in subsection (A), that an appellant's opening brief must contain:

> (3) A **statement of the case** consisting of a summary of the facts and procedural events relevant and necessary to an understanding of the issues presented by the appeal, with ample references to the specific location in the record supporting each of the statements contained in the summary.
>
> (4) An **argument** conforming to the statement of points and authorities, with ample references to the specific location in the record and citations of authority pertinent to each issue of law and which shall contain at the beginning of the argument a statement with reference to the record showing whether the issue was properly preserved for review and, if so, in what manner.

*Id.* RAP 31(H) sets forth penalties that may be imposed in relation to the filing (or non-filing) of briefs:

> (1) A brief may be stricken for failure to substantially comply with the requirements of these rules.
>
> (2) If the appellant's brief has not been filed within the time allowed, the Court may dismiss the appeal.
>
> (3) If the appellee's brief has not been filed within the time allowed, the court may: (a) accept the appellant's statement of the facts and issues as correct; (b) reverse

-14-

the judgment if appellant's brief reasonably appears to sustain such action; or (c) regard the appellee's failure as a confession of error and reverse the judgment without considering the merits of the case.

And RAP 10(B) addresses, generally, the consequences if a party fails to comply with the Rules:

A party's failure to take any step other than the timely filing of a notice of appeal, cross-appeal, or motion for discretionary review does not affect the validity of the appeal or other proceeding in an appellate court. Although failure to comply with rules other than timely filing of a notice of appeal, cross-appeal, or motion for discretionary review does not affect the validity of an appeal or other proceeding, the failure of a party to substantially comply with the rules is ground for such action as the appellate court deems appropriate, which may include:

(1) A deficiency notice or order directing a party to take specific action,

(2) A show cause order,

(3) Striking of filings, briefs, record or portions thereof,

(4) Imposition of fines on counsel for failing to comply with these rules of not more than $1,000,

(5) A dismissal of the appeal or denial of the motion for discretionary review, and

(6) Such further remedies as are specified in any applicable rule.

-15-

The HOA argues that Hans failed to include supportive references to the record or statements referencing how and where in the record his arguments were properly preserved for our review. We note that in his response to the motion, Hans stated that any inadequacies could be cured in a reply brief. However, Hans essentially failed to correct these deficiencies in his appellant/cross-appellee reply brief, as the HOA argued in its reply brief.

As to his references to the record, in his appellant/cross-appellee reply brief, Hans cited 18 times to page 1182 of the record, which he identified as appearing in Volume III. Page 1182 of the record is in Volume VIII and is the first page of the exhibits Hans filed on January 18, 2021, prior to the hearing, beginning with a redacted invoice. He also attached these exhibits to the appendix of that brief and cited to the appropriate appendix number in the brief.[1] RAP 32(A) specifically requires "ample references to the specific location in the record" to support the statement of facts and argument sections of the brief. RAP 32(A)(3) and (4). Here, Hans did not provide accurate references to the record. He only cited to one page of the record in the incorrect volume. In addition, Hans did not properly cite to testimony at the hearing, merely referring to "Hans hearing

---

[1] The HOA disputes Hans' inclusion of these exhibits in the appendix, stating they were not part of the record. It appears that the exhibits included in the appendix were the ones Hans filed prior to the hearing and which the court declined to strike, despite Hans' failure to authenticate or introduce them into the record at the hearing. We decline to revisit that ruling.

testimony" in several footnotes.  Although we decline to strike Hans' brief for problems with citations to the record, counsel is cautioned to comply with the RAP 32 in future appeals by properly referring to the appellate record, both documentary and recorded, to support the statements in briefs.

This Court is more concerned about Hans' failure to state how and where in the record he preserved the arguments he made in his initial brief as well as his attempt to raise issues that were either not raised in his initial brief or were never raised before the circuit court.  Again, we shall not grant the passed motion, but we shall impose sanctions in our review of the appeal.

The Supreme Court of Kentucky stated in *Ford v. Commonwealth*, 628 S.W.3d 147, 155 (Ky. 2021), that:

> [T]he manifest injustice standard of review is reserved only for errors in appellate briefing related to the statement of preservation.  If a party fails to inform the appellate court of where in the record his issue is preserved, the appellate court can treat that issue as unpreserved.  Appellate courts
>
> > review[ ] unpreserved claims of error on direct appeal only for palpable error.  To prevail, one must show that the error resulted in "manifest injustice."  [Kentucky Rules of Criminal Procedure] RCr 10.26 provides:
> >
> > > A palpable error which affects the substantial rights of a party may be considered . . . by an appellate court on appeal, even

though insufficiently raised or
preserved for review, and
appropriate relief may be
granted upon a determination
that *manifest injustice* has
resulted from the error.
(Emphasis added).

*Martin v. Commonwealth*, 207 S.W.3d 1, 3 (Ky. 2006).

Because Hans failed to state where in the record and how he raised the issues in his

initial brief and failed to correct that error in his appellant/cross-appellee reply

brief, we shall confine our review to the manifest injustice standard.

And we shall also accept the HOA's request to not consider the issues

that Hans either did not raise before the circuit court and/or raised for the first time

in his appellant/cross-appellee reply brief. These arguments are found in Sections

I.A, I.C, II.A, and II.D of that brief. *See Norton Healthcare, Inc. v. Deng*, 487

S.W.3d 846, 852 (Ky. 2016) (citations omitted) ("We have long endorsed a rule

that 'specific grounds not raised before the trial court, but raised for the first time

on appeal will not support a favorable ruling on appeal.' When a trial court never

has the opportunity to rule on a legal question presented to an appellate court, an

appellant presents a different case to the appellate court than the one decided by

the trial court. Indeed, an appellate court is 'without authority to review issues not

raised in or decided by the trial court.' The proper role for an appellate court is to

review for error – and there can be no error when the issue has not been presented

-18-

to the trial court for decision."); *Seeger Enterprises, Inc. v. Town & Country Bank and Tr. Company*, 518 S.W.3d 791, 796 (Ky. App. 2017) ("Seeger does not raise this issue in his initial brief, and he was not permitted to raise the issue for the first time in his reply brief. *See, e.g.*, *Catron v. Citizens Union Bank*, 229 S.W.3d 54, 59 (Ky. App. 2006) ('The reply brief is not a device for raising new issues which are essential to the success of the appeal.') (Citation omitted). Therefore, we consider the issue waived.").

The issues raised in Hans' direct appeal address whether the circuit court properly imposed a fine for his renting of the property in violation of the circuit court's July 6, 2020, order regarding short-term rentals and whether the award of attorney fees to the HOA was arbitrary and capricious. We have reviewed these arguments, and we cannot identify any manifest injustice that would support a reversal on either issue. Therefore, we affirm the circuit court's award of fines and sanctions as well as its decision to award attorney fees.

Turning to the cross-appeal, the HOA seeks review of the circuit court's decision to award less than the $39,266.40 in attorney fees it had claimed and in holding that it did not have the authority to enforce the Amended CC&R through fines prior to the entry of the July 6, 2020, order.

We shall first consider whether the HOA had the authority to fine Hans prior to the entry of the July 6, 2020, order when the power to do so was not

-19-

expressly granted or expressly excluded in the HOA's governing documents,

which the HOA identifies as a matter of first impression in Kentucky. Our

standard of review is set forth in *Gosney v. Glenn*, 163 S.W.3d 894, 898-99 (Ky.

App. 2005):

> [T]his case was tried by the circuit court sitting without a jury. It is before this Court upon the trial court's findings of fact and conclusions of law and upon the record made in the trial court. Accordingly, appellate review of the trial court's findings of fact is governed by the rule that such findings shall not be set aside unless clearly erroneous. A factual finding is not clearly erroneous if it is supported by substantial evidence. Substantial evidence is evidence, when taken alone or in light of all the evidence, has sufficient probative value to induce conviction in the mind of a reasonable person. The trial court's conclusions of law, however, are subject to independent de novo appellate determination.

(Citations omitted.) And we shall keep in mind the following recitation of the law

as we review the issue before us:

> As a general rule, courts will not interfere with the internal affairs of voluntary associations. In the absence of mistake, fraud, collusion or arbitrariness, the decisions of the governing body of an association will be accepted by the courts as conclusive. Voluntary associations may adopt reasonable bylaws and rules which will be deemed valid and binding upon the members of the association unless the bylaw or rule violates some law or public policy. It is not the responsibility of the courts to inquire into the expediency, practicability or wisdom of the bylaws and regulations of voluntary associations. . . . Furthermore, the courts will not substitute their interpretation of the bylaws of a voluntary association for the interpretation placed upon those bylaws by the

-20-

voluntary association itself so long as that interpretation is fair and reasonable.

*Kentucky High School Athletic Ass'n v. Hopkins Cnty. Bd. of Ed.*, 552 S.W.2d 685, 687 (Ky. App. 1977), *overruled on other grounds by Nat'l Collegiate Athletic Ass'n v. Lasege*, 53 S.W.3d 77 (Ky. 2001) (citations omitted).

The applicable provisions are set forth in the Amended CC&R from 2006 and in the Articles of Incorporation from 1995. Article IV of the Amended CC&R addresses assessment and states:

> SECTION 1. ASSESSMENTS, CREATION OF THE LIEN AND PERSONAL OBLIGATION. Each Owner, by acceptance of a deed for the Lot whether or not it shall so be expressed in such deed, covenants and agrees to pay the Association (i) annual assessments or charges, and (ii) special assessments for capital improvements, such assessments to be established and collected as provided in Article IV. The annual and special assessments, together with interest, costs and reasonable attorneys' fees, shall be a charge on the land and shall be a continuing lien upon the property against which each such assessment is made. Each such assessment, together with interest, costs and reasonable attorneys' fees, shall also be the personal obligation of the party who was the Owner of the Lot at the time assessment fell due. The personal obligation for delinquent assessments shall not pass to his successors in title unless expressly assumed by them.
>
> SECTION 2. PURPOSES OF ASSESSMENTS.
>
> (A) The assessments levied by the Association shall be used to promote the recreation, health, safety, and welfare of the residents and, in particular, for the acquisition, leasing, improvement and maintenance of

-21-

Property, services and facilities devoted to this purpose, or for the use and enjoyment of the Common Areas, including but not limited to, the cost of repairs, replacements and additions, the cost of labor, equipment, materials, management and supervision, payment of taxes assessed against the Common Areas, including but not limited to landscaping (trees, shrubs, etc.), common utilities (sprinkler systems, lights, etc.), common signage and maintenance of the entrance, the procurement and maintenance of insurance in accordance with the By Laws, the cost of providing security for the Property, the employment of attorneys to represent the Association when necessary, and such other needs as may arise, and for the improvement and maintenance of the Common Areas and Lots.

SECTION 3. SPECIAL ASSESSMENTS FOR CAPITAL IMPROVEMENTS. In addition to the annual assessments authorized above, the Association may levy, in any assessment year, a special assessment applicable to that year only for the cost of defraying in whole or in part the cost of any construction, reconstruction or repair or replacement of a capital improvement upon the Common Areas, including fixtures and personal property thereto. Any such assessment shall require the assent of the Members in accordance with the By Laws.

SECTION 4. UNIFORM RATE OF ASSESSMENT. Annual assessments shall be the same for each Lot. Special assessments shall be the same for each lot.

SECTION 5. EFFECT OF NON-PAYMENT OF ASSESSMENTS; REMEDIES OF THE VILLAS AT ANDOVER HOMEOWNERS ASSOCIATION, INC. Any assessment not paid within fifteen (15) days of the due date shall be subject to a late charge as determined by the Board of Directors of the Association. The Association may bring an action at law against the Owner personally obligated to pay the assessment, or foreclose

the lien against the Property, and interest, costs and reasonable attorneys' fees of such action or foreclosure shall be added to the amount of such assessments. No Owner may waive or otherwise escape liability for the assessments provided for herein by non-use of the Common Areas or abandonment of his Lot.

Article VII of the Amended CC&R addresses the enforcement of the restrictions:

SECTION 1. ENFORCEMENT. Enforcement of these restrictions shall be by a proceeding at law or in equity brought by any Owner or by the Association against any party violating or attempting to violate any covenant or restriction either to restrain violations, to direct restoration and/or to recover damages. Failure of any Owner of the Association to demand or insist upon observance of any of these restrictions or to proceed for restraint in violations shall not be deemed a waiver of the violation or the right to seek enforcement of these restrictions.

Article III of the HOA's Articles of Incorporation (filed in 1995) defines the

purpose of the HOA as follows:

PURPOSES. The corporation is organized for the purpose of performing those functions defined for it in the Declaration of Covenants, Conditions and Restrictions for the Villas at Andover, of record in Deed Boos 1558, Page 05 and 1570, Page 454, in the office of the Clerk of the Fayette County Court, including, but not limited to maintaining and administering the common areas of The Villas at Andover; administering and enforcing the Covenants and Restrictions applicable to The Villas at Andover; collecting and disbursing the assessments and charges as defined in the aforesaid Covenants; the performance of all other functions ascribed to the corporation in such Declaration; and the performance of any other function necessary and appropriate to carry out the purposes of the Declaration.

-23-

Based upon its interpretation of the applicable provisions, the circuit court held that while the HOA had the authority to enforce the restrictions, the HOA "did not have the authority to unilaterally impose 'fines' on the Owners until the legal adjudication of the dispute, which in this case was on July 6, 2020." It held that none of the governing documents provided such authority to the HOA to impose fines to enforce the restrictions without a court order. The Amended CC&R only addressed the HOA's ability to levy special assessments against the owners. The court specifically cited to Article VII of the Amended CC&R, which provides that enforcement of the restrictions "shall be by a proceeding at law or in equity[.]" The court stated that this was the "clearest language regarding the right to impose fines – or, more specifically, the lack thereof." It then held that Hans could only be fined for violations he committed after the entry of the July 6, 2020, order pursuant to that provision.

As held by the circuit court, the problem for the HOA in this case is that the governing documents do not expressly authorize it to impose fines to enforce its restrictions. And the HOA concedes that there is no express language in these documents specifically stating this. The HOA argues that the governing documents give it broad authority to enforce the restrictions and that one way to do so is to bring an action to recover damages. The HOA relies on *Landrum v. Commonwealth ex rel. Beshear*, 599 S.W.3d 781, 792-94 (Ky. 2019), to argue that

its actions in imposing the fines against Hans were not arbitrary or unreasonable because it had authority to take this action, Hans was afforded due process, and the action was based on substantial evidence or relevant factors. We would agree with the HOA's argument had it not been for the language that is actually in the Amended CC&R.

Article VII of the Amended CC&R addresses the enforcement of the restrictions and specifically states: "Enforcement of these restrictions **shall** be by a proceeding at law or in equity brought by any Owner or by the Association against any party violating or attempting to violate any covenant or restriction either to restrain violations, to direct restoration and/or to recover damages." (Emphasis added.) The use of the word "shall" means that this method of enforcement is mandatory and not merely one way for the HOA to enforce its restrictions. The governing documents do not address the HOA's authority to impose fines prior to obtaining a court order, and the only assessments specifically authorized for the HOA to impose are annual and special assessments, which are to be the same amount for each lot. For these reasons, we hold that the circuit court did not err as a matter of law in awarding only post-order fines as damages.

Finally, we shall consider the HOA's argument that the circuit court improperly reduced the amount of attorney fees it claimed in connection with enforcing the restriction. The circuit court awarded $30,000.00 in fees; the HOA

had sought $39,266.40, which included $26,835.40 in post-order attorney fees. "We review a trial court's award of attorney fees for abuse of discretion." *Banker v. University of Louisville Athletic Association, Inc.*, 466 S.W.3d 456, 465 (Ky. 2015). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

The circuit court stated in its order that it could not award the full amount the HOA sought in fees "without the actual invoices for a detailed review of the attorney fee structure and work specifically completed on this matter," noting that the firm had been "retained generally in order to work on other unrelated matters for the HOA." In its brief, the HOA states that the circuit court did in fact have the redacted invoices that reflected fees through November 1, 2020. Our review of the invoices for work between April 1, 2019, and October 28, 2020, beginning on page 1182 of the record, confirms that while the invoices certainly list the dates, time spent, and rates, the description of the work performed for each of the entries is redacted. This precluded the court from conclusively determining that the billed work was specifically related to Hans' case as opposed to other work the firm performed for the HOA, despite counsel's affidavit that it indeed was. We also note that the record does not appear to include any billing

statements for work performed after October 28, 2020, to support counsel's second affidavit dated February 22, 2021.

The court ultimately based its decision to award the HOA $30,000.00 in attorney fees upon the "extensive litigation expenses" it had incurred "to undertake numerous costly and time-consuming actions, including, *inter alia*, the researching of issues, the drafting of pleadings and motions, discovery, alternative dispute resolution efforts, and preparation for and attendance at numerous hearings." Had the litigation with Hans been the only matter for which the firm had been retained, the result would be different. However, the firm had been retained to generally represent the HOA and should only be permitted repayment of its fees for that matter. We find no abuse of discretion in the circuit court's decision to award $30,000.00 in attorney fees for the reasons set forth in its order.

For the foregoing reasons, the judgment of the Fayette Circuit Court is affirmed, and the HOA's passed motion to strike Hans' brief or dismiss his appeal is denied.

ALL CONCUR.

ENTERED: _June 16, 2023_____    _____

JUDGE, COURT OF APPEALS

BRIEFS FOR
APPELLANTS/CROSS-
APPELLEES:

Kamp Townsend Purdy
Lexington, Kentucky

BRIEFS FOR APPELLEE/CROSS-
APPELLANT:

Christopher P. Farris
Lexington, Kentucky